712 P.2d 1371

**REGENTS OF the UNIVERSITY OF NEW MEXICO, Plaintiff-Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPANIES, Defendant-Appellee.**

**REGENTS OF the UNIVERSITY OF NEW MEXICO, Plaintiff-Appellant,**

v.

**Fabian ARCHULETA and Jonathan Archuleta, Defendants-Appellees.**

**Nos. 15842, 15887.**

Supreme Court of New Mexico.

Jan. 23, 1986.

710

Poole, Tinnin & Martin, Richard D. Yeomans, Kara L. Kellogg, Albuquerque, for plaintiff-appellant.

Modrall, Sperling, Roehl, Harris & Sisk, Joseph E. Roehl, Neal E. Binczweski, Albuquerque, for defendant-appellee Fireman's Fund.

Shaffer, Butt, Thornton & Baehr, Paul L. Butt, Albuquerque, for defendant-appellee Archuleta.

## OPINION

WALTERS, Justice.

Appellants, the Regents of the University of New Mexico, brought suit against Joseph Ortega and appellees Fireman's Fund Insurance Co. (Fireman's) and Fabian and Jonathan Archuleta, to enforce a hospital lien pursuant to the New Mexico Hospital Lien Act, NMSA 1978, Sections 48–8–1 to –7. The trial court, determining that the Regents' suit was barred by the applicable statute of limitations, entered two separate orders granting the Archuletas' and Fireman's motions for summary judgment. The Regents appealed separately against the Archuletas and Fireman's; the Court has consolidated both appeals for decision. We reverse.

This litigation arises from an accident occurring when an automobile, owned by Fabian Archuleta and driven by his minor son Jonathan, collided with a motorcycle occupied by Ortega and Vincent Young. The automobile was insured by Fireman's in the amount of $35,000. As a result of the accident both Ortega and Young underwent surgery for amputation of a leg. The aggregate amount of the claims asserted against the Archuletas greatly exceeded the limits of their insurance policy. Consequently, Fireman's filed an interpleader action in the United States District Court for the District of New Mexico requesting that it be discharged from all liability upon tendering the full face amount of the insurance policy, and that Young, Ortega, and the Archuletas be required to settle between themselves their respective rights to the funds. The Regents were not a party to the federal court action. As directed by the federal court, Fireman's transmitted the insurance funds to the United States district court clerk by drafts dated January 3, 1983 and January 6, 1983 in the amounts of $3,500 and $32,034.67, respectively. On May 4, 1983, the United States district court ordered disbursement of a specified sum to Ortega. Delivery of Ortega's share of the funds was made to him on May 13, 1983.

Ortega was treated for his injuries at the University of New Mexico Hospital which is operated by the Regents. Allegedly, the hospital never received payment for Ortega's treatment. In accordance with NMSA 1978, Section 48–8–2, the Regents filed their notice of a hospital lien with the Clerk of Bernalillo County, dated July 21, 1981, and sent copies of the notice to Ortega, the Archuletas, and to Fireman's. On May 3, 1984, the Regents brought this action in state court to enforce their lien.

Section 48–8–3 of the Act provides:

**48–8–3. Persons liable for payment of lien; limitation of actions.**

A. *Any person, firm or corporation, including an insurance carrier, making any payment to a patient or to his attorney, heirs or legal representative* as compensation for the injury sustained, after the filing and receipt of written notice of the lien, as aforesaid; and without paying the hospital asserting the lien the amount of its lien or that portion of the lien which can be satisfied out of the money due under any final judgment or contract of compromise or settlement, less payment of the amount of any prior liens, *shall be liable to the hospital for the amount that the hospital was entitled to receive.*

B. *Liability of the person, firm or corporation for the satisfaction of the hospital lien shall continue for a period of one year after the date of any payment of any money to the patient,* his heirs or legal representatives as damages or under a contract of compromise or settlement. Any hospital may enforce its lien by a suit at law against the person, firm or corporation making the payment. In the event of a suit to enforce a lien the hospital may recover a reasonable attorney's fee and the costs of filing and recording the lien. (Emphasis added.)

The questions raised on appeal are: (1) the date payment was made to Ortega within the meaning of Section 48–8–3; and (2) who actually made the payment.

The trial court held that payment under Section 48–8–3 occurred in January 1983, when Fireman's deposited the insurance funds into the United States district court registry. Since the Regents' complaint was filed more than a year after that date, the trial court declared their cause of action barred.

The Regents contend that payment to the patient was not made until the funds were delivered to Ortega on May 13, 1983 or, at the very earliest, until the federal court

entered its order of disbursement to Ortega on May 4, 1983. Since the Regents' complaint was filed in state court within a year from the earlier date, they maintain that their suit was timely. In addition, the Regents claim that Fireman's made the payment to Ortega on behalf of its insured, Fabian Archuleta, and that both Fireman's and the Archuletas are liable, therefore, for the lien amount. We agree.

■ The trial court erred in determining that the statute of limitations commenced to run at the time the funds were deposited with the federal court. Summary judgment is properly affirmed only if it can be sustained upon correct legal principles. *Thomas v. Gardner,* 75 N.M. 371, 404 P.2d 853 (1965).

Paragraph B of Section 48–8–3 establishes that the one-year limitation period commences on "the date of any payment of any money to the patient, his heirs or legal representatives...." The Regents argue that "payment," to be effective, requires delivery of the funds to any of the persons named. *See Hanna v. McCrory,* 19 N.M. 183, 141 P. 996 (1914). Fireman's, on the other hand, maintains that relinquishment of dominion and control over the funds is the critical factor to be considered and that once Fireman's paid the funds into the federal court's registry, it was absolved of any further liability.

In interpreting a statute this Court must consider the ordinary and usual meaning of words used if they are plain and unambiguous, provided such an interpretation is not unjust, unreasonable or contradictory. *Atencio v. Board of Education,* 99 N.M. 168, 655 P.2d 1012 (1982). *See also Gas Co. v. O'Cheskey,* 94 N.M. 630, 614 P.2d 547 (Ct.App.1980) (when intent is clear and plainly appears in the statute, courts will not use rules of statutory construction). Under the plain meaning rule, the language "any payment to a patient" and "any payment of any money to the patient," means that the patient (or his heirs or legal representatives) must actually receive payment. The statute clearly makes payment *to the*

*patient* the act that triggers the running of this limitation period.

■ Furthermore, a hospital can assert a lien only upon "that part of the judgment, settlement or compromise going, or belonging to [a] patient. . . ." § 48–8–1(A). In January, 1983, it was undetermined whether Ortega was entitled to any portion of the funds. Ortega's entitlement was not established until entry of the United States district court's order of May 4, 1983. Since Ortega did not have an established legal right to any part of the insurance funds until the May 4th order of disbursement, payment to him could not have occurred before that time. *See Hardy v. Construction Systems, Inc.,* 556 S.W.2d 843 (Tex. Civ.App.1977) (litigant's right to fund in interpleader action is determined and fixed upon court's disbursement order).

Fireman's and the Archuletas contend that payment in an interpleader action occurs when the funds are deposited in the court's registry and that the stakeholder is absolved of all liability at that time. *See Metropolitan Life Insurance Co. v. Kwicinski,* 78 F.R.D. 235 (E.D.Wis.1978). Payment for purposes of an interpleader action, however, need not be the same as payment to the patient for the purposes of commencing the running of the statutory period of the New Mexico Hospital Lien Act or for measuring the payor's liability to the hospital under that Act. Fireman's relies on the fact that the Regents knew of the federal action and could have intervened, and argues that the Regents should be bound by that decision to their estoppel in this action. But any discharge Fireman's received in the interpleader action pertained only to the claims of the parties to that suit, and could not affect the Regents' cause of action under the Act. A claimant who is not a party is not bound by a judgment merely because he could have intervened. *McGhee v. United States,* 194 Ct.Cl. 86, 437 F.2d 995 (1971); *see also Morris v. Gressette,* 425 F.Supp. 331 (D.S. C.1976), *aff'd,* 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977) (claim that a person who knows of a suit involving an issue affecting him can be bound if he fails to intervene is contrary to fundamental concepts of due process).

■ Finally, Fireman's and the Archuletas contend that if payment to the patient is determined to have occurred in May rather than in January, then the federal court clerk was the person making payment and it is he who is liable under Section 48–8–3, not Fireman's or the Archuletas. This is a superficial contention. Fireman's was unquestionably the source of the funds delivered to Ortega in May; the court clerk merely provided a neutral depository and became the ultimate conduit for the funds. Similarly, the Archuletas' argument—that the payment was not made by Fireman's on the Archuletas' behalf—is equally specious and unpersuasive. As the Archuleta's insurer, Fireman's was obligated to pay to the limits of its policy those damages for which the Archuletas were legally responsible because of the accident. In fact, Fabian Archuleta acknowledged in his affidavit that the policy proceeds were tendered on his behalf.

The trial court's summary judgment is reversed and the case is remanded for reinstatement of the Regents' complaint and such further proceedings as may be necessary thereunder.

IT IS SO ORDERED.

SOSA, Senior Justice, and FEDERICI, J., concur.