764 P.2d 873

**REGENTS OF the UNIVERSITY OF NEW MEXICO, Plaintiff–Appellant,**

v.

**Vincent LACEY and Liberty Mutual Insurance Company, Defendants–Appellees.**

No. 17523.

Supreme Court of New Mexico.

Nov. 21, 1988.

Mickey D. Barnett, Mark J. Caruso, Albuquerque, for plaintiff-appellant.

Lamb, Metzgar & Lines, Farrell L. Lines, Albuquerque, for defendant-appellee Lacey.

Rodey, Dickason, Sloan, Akin & Robb, John M. Brant, Albuquerque, for defendant-appellee Liberty Mut.

## OPINION

STOWERS, Justice.

Plaintiff–Appellants, the Regents of the University of New Mexico (the Regents), appeal from a judgment of dismissal ren-

dered in favor of defendant-appellee, Liberty Mutual Insurance Company (Liberty Mutual). The trial court determined that the action was time-barred under the New Mexico Hospital Lien Act, NMSA 1978, Sections 48–8–1 to –7 (Repl.Pamp.1987). We affirm.

The facts alleged in plaintiffs' complaint deemed admitted by the motion to dismiss and subsequently dealt with by the trial court as a motion for summary judgment are as follows: On March 29, 1985, an accident occurred between Thomas R. Wadsworth, the driver of an automobile, and defendant, Vincent Lacey, the driver of a motorcycle. The automobile was insured by Liberty Mutual. As a result of this accident, Lacey was treated at the University of New Mexico Hospital, operated by the Regents, from March 29 to August 12, 1985, incurring expenses in the amount of $20,594.51.

In accordance with NMSA 1978, Section 48–8–2, the Regents filed their notice of a hospital lien with the Clerk of Bernalillo County, dated April 26, 1985, with subsequent addenda on May 22, 1985, July 3, 1985, and February 16, 1986, and sent copies of the notices to all parties. A check in the amount of $58,265.35 was issued by Liberty Mutual on behalf of Wadsworth to Lacey and the law firm of Lamb, Metzgar, and Lines, P.A., for all the claims Lacey had against Wadsworth. The check was received by Lacey's counsel, Farrell Lines, on May 28, 1986. On November 10, 1986, Lines requested from the Regents a 50 percent reduction of the amount Lacey owed the hospital. The Regents informed Lines that the hospital is constitutionally prohibited from accepting less than full payment. Nonetheless, on January 15, 1987, Lacey, through his attorney Lines, sent to the hospital only $10,000 as full payment.

On June 19, 1987, the Regents brought this action against Lacey and Liberty Mutual for debt and money due on an open account and enforcement of their hospital lien. Liberty Mutual moved to dismiss pursuant to NMSA 1978, Section 48–8–3(B). That section provides: "Liability of the per-

son, firm or corporation for the satisfaction of the hospital lien shall continue *for a period of one year after date of any payment of any money to the patient, his heirs or legal representatives* as damages or under a contract of compromise or settlement." (emphasis added). After hearing oral argument on the motion, the trial court determined that the Regents' suit was time-barred since the effective date for the commencement of the statutory period of limitations was May 28, 1986. On that basis the court dismissed the case against Liberty Mutual with prejudice. This appeal follows.

Arguments made by the Regents on appeal are: (1) The mere tender of a release and two-party settlement check is not "payment of any money" under Section 48–8–3(B); (2) A payment to an attorney is not synonymous with payment to the legal representative under Section 48–8–3(B); and (3) A misrepresentation tolls the one-year statute of limitations in Section 48–8–3(B).

The check in the amount of $58,265.35 issued by Liberty Mutual and payable to Lacey and Lamb, Metzgar and Lines was received by Lines on May 28, 1986. Accompanying the check was a memorandum and release form from Liberty Mutual setting forth three prerequisites to creating a release. These were: "(1) Fill in the date the release is signed; (2) Write 'Have Read This Release'; and (3) Sign your name in front of a notary." The check was endorsed by Lacey and deposited into the law firm's trust account on November 6, 1986. The Regents had no knowledge of the check or the deposit into the trust account until November 6, 1986, when Lines informed the hospital that "we finally settled with the insurance company." The Regents contend there was no payment within the meaning of Section 48–8–3(B) until both Lacey and Lines negotiated the two-party settlement check and met the three requirements executing the release. Therefore, the Regents argue the one-year statutory time period did not begin to run before November 10, 1986.

■ "The delivery of a check does not, ordinarily, per se, constitute payment in a

legal sense." *Franciscan Hotel Co. v. Albuquerque Hotel Co.*, 37 N.M. 456, 472, 24 P.2d 718, 726 (1933). However if, when the check is delivered, the drawer has funds in the drawee bank to meet it, and the check is honored and paid upon presentment, the conditional nature of the payment becomes absolute and the date of payment will be deemed to have been made as of the date of the original delivery of the check. *Id.* "When a check is paid, the payment of the underlying debt becomes absolute and it is deemed paid as of the date of the giving of the check." 6 R. Anderson, *Anderson On The Uniform Commercial Code* § 3–802:19 (3d ed. 1984). Cases from other areas of the law also indicate that payment is made upon delivery of the check and not deposit in the bank. *See, e.g., Fletcher v. Ray*, 220 Ark. 844, 250 S.W.2d 734 (1952) (candidate's election fee is paid as of delivery of check when check is subsequently paid in due course); *Ogier v. Pacific Oil & Gas Dev. Corp.*, 135 Cal.App.2d 776, 288 P.2d 101 (1955) (payment for securities was made as of delivery of check when check is subsequently paid in due course); *Wayzata Enterprises, Inc. v. Herman*, 268 Minn. 117, 128 N.W.2d 156 (1964) (payment on real estate contract is deemed to be made as of delivery of check when check is subsequently paid in due course); *Finn v. National City Bank of N.Y.*, 36 N.Y.S.2d 545 (N.Y.City Ct.1942) (mailing of check by bank constitutes delivery so as to prevent attachment of debt in New York prior to presentment); *Texas Mut. Life Ins. Ass'n v. Tolbert*, 134 Tex. 419, 136 S.W.2d 584 (1940) (insurance premium is paid as of delivery of check when check is subsequently paid in due course).

■ Payment of any money for purposes of Section 48–8–3(B) occurred when Liberty Mutual delivered the check to Lines on May 28, 1986. Although it was not negotiated until November 6, 1986, when upon presentment the check was honored and paid, the date of payment is the date of the original delivery of the check. Further, there is no language in the statute that requires the execution of a release before triggering the one-year limitation period.

■ In addition, delivery of this check to Lines, Lacey's attorney, was "payment to the patient * * * or legal representative" as prescribed in Section 48–8–3(B). Settlement checks are usually given to attorneys on behalf of their clients. A legal representative, defined in its broadest sense, is one who stands in place of another and represents the interests of another; a person who oversees the legal affairs of another. *Black's Law Dictionary* 807 (5th ed. 1979). An attorney is an agent or one who is appointed and authorized to act in the place or stead of another. *Id.*, at 117. In considering the ordinary and usual meaning of the words used in this statute, an interpretation that an attorney may be a legal representative is not unreasonable. *See Regents of Univ. of N.M. v. Fireman's Fund Ins. Co.*, 103 N.M. 709, 711, 712 P.2d 1371, 1373 (1986).

We stated in *Regents of Univ. of N.M.*, 103 N.M. at 711–12, 712 P.2d at 1373–74, that payment to the patient is the act that triggers the running of the one-year limitation period. The clear language of Section 48–8–3(B) however contemplates compliance when payment is made either to "the patient ... or legal representative." We conclude that an attorney is a legal representative for purposes of receiving payment under this statute and to commence the running of the statute of limitations therein. "Where a statute grants a new remedy, and at the same time places a limitation of time within which the person complaining must act, the limitation is a limitation of the right as well as the remedy, and in the absence of qualifying provisions or saving clauses, the party seeking to avail himself of the remedy must bring himself strictly within the limitations." *Ortega v. Shube*, 93 N.M. 584, 586, 603 P.2d 323, 325 (Ct.App.1979) (quoting *Swallows v. City of Albuquerque*, 61 N.M. 265, 266, 298 P.2d 945, 946–47 (1956)). Upon failure to institute the action within the specified period beginning May 28, 1986, the Regents' right to do so ended.

Lastly, the Regents contend that Liberty Mutual should be estopped from raising the statute of limitations as a defense. The

doctrine of equitable estoppel, however, is not applicable to the facts in this case.

The essential elements of equitable estoppel as related to the party estopped, Liberty Mutual, are: (1) conduct (by Liberty Mutual) which amounts to a false representation or concealment of material facts; (2) intention (by Liberty Mutual) that such conduct shall be acted upon by the Regents; and (3) knowledge, actual or constructive, of the real facts (by Liberty Mutual). *Capo v. Century Life Ins. Co.,* 94 N.M. 373, 377, 610 P.2d 1202, 1206 (1980). The essential elements as related to the party claiming estoppel (the Regents) are: (1) lack of knowledge and means of knowledge of the truth as to the facts in question (by the Regents); (2) reliance (by the Regents) upon the conduct of the party estopped; and (3) action (by the Regents) based thereon of such a character as to prejudicially change its position. *Id. See also In re Estates of Salas,* 105 N.M. 472, 475, 734 P.2d 250, 253 (Ct.App.1987). "A party alleging and relying on a claim of estoppel has the burden of establishing all facts necessary to prove the claim." *In re Estates of Salas,* 105 N.M. at 475, 734 P.2d at 253.

Under the facts presented herein, the element of misrepresentation or concealment of material facts by Liberty Mutual was not shown. Furthermore, the Regents did not show that they lacked knowledge of the true facts with respect to the one-year statute of limitations. They knew that the statute began to run when payment was made. The Regents learned no later than November 1986 that payment had been made, yet did not file suit until June 1987. There is no estoppel in this case.

The judgment of the district court is affirmed and the parties will bear their own costs and attorney fees.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and RANSOM, J., concur.