## BARNHILL *v.* JOHNSON, TRUSTEE

No. 91–159.   Argued January 14, 1992—Decided March 25, 1992

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, O'CONNOR, SCALIA, KENNEDY, SOUTER, and THOMAS, JJ., joined. STEVENS, J., filed a dissenting opinion, in which BLACKMUN, J., joined, *post*, p. 403.

*William J. Arland III* argued the cause for petitioner. With him on the briefs was *Emily A. Franke.*

*Nancy S. Cusack* argued the cause for respondent. With her on the brief were *William P. Johnson* and *Andrew J. Cloutier.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Under the Bankruptcy Code's preference avoidance section, 11 U. S. C. §547, the trustee is permitted to recover, with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed. We granted certiorari to decide whether, in determining if a transfer occurred within the 90-day preference period, a transfer made by check should be deemed to occur on the date the check is presented to the recipient or

on the date the drawee bank honors it. We hold that the latter date is determinative.

The relevant facts in this case are not in dispute. The debtor[1] made payment for a bona fide debt to petitioner Barnhill. The check was delivered to petitioner on November 18. The check was dated November 19, and the check was honored by the drawee bank on November 20. The debtor later filed a Chapter 11 bankruptcy petition. It is agreed by the parties that the 90th day before the bankruptcy filing was November 20.

Respondent Johnson was appointed trustee for the bankruptcy estate. He filed an adversary proceeding against petitioner, claiming that the check payment was recoverable by the estate pursuant to 11 U. S. C. § 547(b). That section generally permits the trustee to recover for benefit of the bankruptcy estate transfers of the debtor's property made within 90 days of the bankruptcy filing. Respondent asserted that the transfer occurred on November 20, the date the check was honored by the drawee bank, and therefore was within the 90-day period. Petitioner defended by claiming that the transfer occurred on November 18, the date he received the check (the so-called "date of delivery" rule), and that it therefore fell outside the 90-day period established by § 547(b)(4)(A).

The Bankruptcy Court concluded that a date of delivery rule should govern and therefore denied the trustee recovery. The trustee appealed, and the District Court affirmed. The trustee then appealed to the Court of Appeals for the Tenth Circuit.

---

[1] The debtor in this case is actually a collection of debtors whose simultaneous and related bankruptcy filings have been consolidated in a single proceeding: Alan J. and Mary Frances Antweil, husband and wife, Morris Antweil (deceased), and Hobbs Pipe & Supply, a general partnership. Nothing in our decision turns on this fact, and we therefore refer to them collectively as "debtor."

The Court of Appeals for the Tenth Circuit reversed, concluding that a date of honor rule should govern actions under § 547(b). *In re Antweil*, 931 F. 2d 689 (1991). It distinguished a prior decision, *In re White River Corp.*, 799 F. 2d 631 (1986), in which it held that, for purposes of § 547(c), a date of delivery rule should govern when a transfer occurs.[2] The Tenth Circuit concluded that §§ 547(b) and 547(c) have different purposes and functions, justifying different rules for each. It further concluded that a date of honor rule was appropriate because such a rule was consistent with provisions of the Uniform Commercial Code (U. C. C.), was capable of easier proof, and was less subject to manipulation. We granted certiorari to resolve a Circuit split.[3] 502 U. S. 807 (1991).

In relevant part, § 547(b) provides:

"(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

.          .          .          .          .

"(4) made—

"(A) on or within 90 days before the date of the filing of the petition . . . ."

---

[2] Section 547(c) establishes certain transfers that are not recoverable as preferences, even if they fall within the 90-day preference period. See *infra*, at 402.

[3] Those selecting a date of honor rule include *Nicholson* v. *First Investment Co.*, 705 F. 2d 410 (CA11 1983) (Bankruptcy Act), and *In re New York City Shoes, Inc.*, 880 F. 2d 679 (CA3 1989) (dicta). Those selecting date of delivery include *Global Distribution Network, Inc.* v. *Star Expansion Co.*, 949 F. 2d 910 (CA7 1991); *In re Virginia Information Systems Corp.*, 932 F. 2d 338 (CA4 1991); *In re Belknap, Inc.*, 909 F. 2d 879 (CA6 1990); and *In re Kenitra, Inc.*, 797 F. 2d 790 (CA9 1986), cert. denied *sub nom. Morrow, Inc.* v. *Agri-Beef Co.*, 479 U. S. 1054 (1987).

Title 11 U. S. C. § 101(54) (1988 ed., Supp. II)[4] defines "transfer" to mean

> "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

Section 547(e) provides further guidance on the meaning and dating of a transfer. For purposes of § 547, it provides

> "[(e)(1)](B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

> "[(e)](2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

> "(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

> "(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days . . . ."

Our task, then, is to determine whether, under the definition of transfer provided by § 101(54), and supplemented by § 547(e), the transfer that the trustee seeks to avoid can be said to have occurred before November 20.

"What constitutes a transfer and when it is complete" is a matter of federal law. *McKenzie* v. *Irving Trust Co.*, 323

---

[4] The definition of transfer was codified in 1986 at 11 U. S. C. § 101(50). In 1990, Congress added eight new definitions to § 101 in two separate Acts, Public Laws 101–311 and 101–647. The addition of the new definitions apparently has resulted in confusion in codifying those definitions, with the result that there are now in the United States Code, Chapter 11, two sections 101(54), one defining "stockbroker" and the second defining "transfer." We will refer to "transfer" as being codified at § 101(54).

U. S. 365, 369–370 (1945). This is unsurprising since, as noted above, the statute itself provides a definition of "transfer." But that definition in turn includes references to parting with "property" and "interest[s] in property." In the absence of any controlling federal law, "property" and "interests in property" are creatures of state law. *Id.*, at 370; *Butner* v. *United States*, 440 U. S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law"). Thus it is helpful to sketch briefly the rights and duties enjoyed under state law by each party to a check transaction.[5]

A person with an account at a bank enjoys a claim against the bank for funds in an amount equal to the account balance. Under the U. C. C., a check is simply an order to the drawee bank to pay the sum stated, signed by the maker and payable on demand. U. C. C. §§ 3–104(1), (2)(b), 2 U. L. A. 224 (1991). Receipt of a check does not, however, give the recipient a right against the bank. The recipient may present the check, but, if the drawee bank refuses to honor it, the recipient has no recourse against the drawee. § 3–409(1), 2A U. L. A. 189 (1991).[6]

That is not to say, however, that the recipient of a check is without any rights. Receipt of a check for an underlying obligation suspends the obligation "pro tanto until the instrument['s] . . . presentment[;] . . . discharge of the underlying obligor on the instrument also discharges him on the obligation." § 3–802(1)(b), 2A U. L. A. 514 (1991). But should

---

[5] We discuss these issues under the rubric of the U. C. C. and, in particular, U. C. C. Article 3. New Mexico, the State in which the instant transaction occurred, has adopted the U. C. C., see N. M. Stat. Ann. § 55–3–101 *et seq.* (1978 and Supp. 1991), as have all other 49 States, the District of Columbia, Guam, and the Virgin Islands. We are aware of no material differences between the version adopted by each of these other jurisdictions and the one we consider today, that of New Mexico.

[6] "A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it."

the drawee bank refuse to honor a check, a cause of action against the drawer of the check accrues to the recipient of a check "upon demand following dishonor of the instrument." § 3–122(3), 2 U. L. A. 407 (1991); see also § 3–413(2), 2A U. L. A. 208 (1991). And the recipient of a dishonored check, received in payment on an underlying obligation, may maintain an action on either the check or the obligation. § 3–802(1)(b), 2A U. L. A. 514 (1991).

With this background we turn to the issue at hand. Petitioner argues that the Court of Appeals erred in ignoring the interest that passed from the debtor to the petitioner when the check was delivered on a date outside the 90-day preference period. We disagree. We begin by noting that there can be no assertion that an unconditional transfer of the debtor's interest in property had occurred before November 20. This is because, as just noted above, receipt of a check gives the recipient no right in the funds held by the bank on the drawer's account. Myriad events can intervene between delivery and presentment of the check that would result in the check being dishonored. The drawer could choose to close the account. A third party could obtain a lien against the account by garnishment or other proceedings. The bank might mistakenly refuse to honor the check.[7]

The import of the preceding discussion for the instant case is that no transfer of any part of the debtor's claim against the bank occurred until the bank honored the check on November 20. The drawee bank honored the check by paying it. U. C. C. § 1–201(21), 1 U. L. A. 65 (1989) (defining honor); § 4–215(a), 2B U. L. A. 45 (1991). At that time, the bank had a right to "charge" the debtor's account, § 4–401, 2B U. L. A. 307 (1991)—*i. e.*, the debtor's claim against the bank was reduced by the amount of the check—and petitioner no longer

---

[7] Admittedly, such behavior might create a cause of action for the debtor-drawer, see U. C. C. § 4–402, 2B U. L. A. 59 (1991), but the recipient would not have any claim against the bank.

had a claim against the debtor. Honoring the check, in short, left the debtor in the position that it would have occupied if it had withdrawn cash from its account and handed it over to petitioner. We thus believe that when the debtor has directed the drawee bank to honor the check *and* the bank has done so, the debtor has implemented a "mode, direct or *indirect* . . . of disposing . . . of property or . . . an interest in property." 11 U. S. C. § 101(54) (1988 ed., Supp. II) (emphasis added). For the purposes of payment by ordinary check, therefore, a "transfer" as defined by § 101(54) occurs on the date of honor, and not before. And since it is undisputed that honor occurred within the 90-day preference period, the trustee presumptively may avoid this transfer.

In the face of this argument, petitioner retreats to the definition of "transfer" contained in § 101(54). Petitioner urges that rather than viewing the transaction as involving two distinct actions—delivery of the check, with no interest in property thereby being transferred, and honoring of the check, with an interest being transferred—that we instead should view delivery of the check as a "conditional" transfer. We acknowledge that § 101(54) adopts an expansive definition of transfer, one that includes "every mode . . . absolute or conditional . . . of disposing of or parting with property or with an interest in property." There is thus some force in petitioner's claim that he did, in fact, gain something when he received the check. But at most, what petitioner gained was a chose in action against the debtor.[8] Such a right, however, cannot fairly be characterized as a conditional right to

---

[8] Petitioner asserts that upon the date of delivery, he held a cause of action against the debtor. Brief for Petitioner 18. We think that petitioner may overstate matters a bit; it appears under the U. C. C. that receipt of the check provides a *contingent* cause of action, the contingency being a subsequent dishonoring of the check and a demand to the drawer for payment. See U. C. C. § 3–122(3), 2 U. L. A. 407 (1991), and Official Comment ¶ 1. It is unnecessary to resolve this question, however, for even on petitioner's more expansive assertion his claim under the Bankruptcy Code fails.

"property . . . or an interest in property," § 101(54), where the property in this case is the account maintained with the drawee bank. For as noted above, until the moment of honor the debtor retains full control over disposition of the account and the account remains subject to a variety of actions by third parties. To treat petitioner's nebulous right to bring suit as a "conditional transfer" of the property would accomplish a near-limitless expansion of the term "conditional." In the absence of any right against the bank or the account, we think the fairer description is that petitioner had received no interest in debtor's property, not that his interest was "conditional."

Finally, we note that our conclusion that no transfer of property occurs until the time of honor is consistent with § 547(e)(2)(A). That section provides that a transfer occurs at the time the transfer "takes effect between the transferor and the transferee . . . ." For the reasons given above, and in particular because the debtor in this case retained the ability to stop payment on the check until the very last, we do not think that the transfer of funds in this case can be said to have "taken effect between the debtor and petitioner" until the moment of honor.

Recognizing, perhaps, the difficulties in his position, petitioner places his heaviest reliance not on the statutory language but on accompanying legislative history. Specifically, he points to identical statements from Representative Edwards and Senator DeConcini that "payment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when the check is delivered for purposes of sections 547(c)(1) and (2)." 124 Cong. Rec. 32400 (1978); *id.*, at 34000. We think this appeal to legislative history unavailing.

To begin, we note that appeals to statutory history are well taken only to resolve "statutory ambiguity." *Toibb* v. *Radloff,* 501 U. S. 157, 162 (1991). We do not think this is such a case. But even if it were, the statements on which

petitioner relies, by their own terms, apply only to § 547(c), not to § 547(b). Section 547(c), in turn, establishes various exceptions to § 547(b)'s general rule permitting recovery of preferential transfers. Subsection (c)(1) provides an exception for transfers that are part of a contemporaneous exchange of new value between a debtor and creditor; subsection (c)(2) provides an exception for transfers made from debtor to creditor in the ordinary course of business. These sections are designed to encourage creditors to continue to deal with troubled debtors on normal business terms by obviating any worry that a subsequent bankruptcy filing might require the creditor to disgorge as a preference an earlier received payment. But given this specialized purpose, we see no basis for concluding that the legislative history, particularly legislative history explicitly confined by its own terms to § 547(c), should cause us to adopt a "date of delivery" rule for purposes of § 547(b).[9]

---

[9] Those Courts of Appeals to have considered the issue are unanimous in concluding that a "date of delivery" rule should apply to check payments for purposes of § 547(c). *Braniff Airways, Inc.* v. *Midwest Corp.*, 873 F. 2d 805 (CA5 1989); *In re Continental Commodities, Inc.*, 841 F. 2d 527 (CA4 1988); *In re Wolf & Vine*, 825 F. 2d 197 (CA9 1987); *In re Kenitra, Inc.*, 797 F. 2d 790 (CA9 1986); *In re White River Corp.*, 799 F. 2d 631 (CA10 1986); and *O'Neill* v. *Nestle Libbys P. R., Inc.*, 729 F. 2d 35 (CA1 1984). A few Bankruptcy Courts and District Courts have disagreed. See, *e. g., In re Hartwig Poultry, Inc.*, 56 B. R. 332 (Bkrtcy. Ct. ND Ohio 1985). We, of course, express no views on that issue, which is not properly before us. We do note, however, that § 547(c)(2) has undergone significant change since the time of Representative Edwards' and Senator DeConcini's comments. Section 547(c)(2) previously had a requirement that, in order for a payment by the debtor to qualify as a payment in the ordinary course of business, the payment had to have been made within 45 days of when the underlying debt was first incurred. That requirement has since been eliminated. See *Union Bank* v. *Wolas*, 502 U. S. 151, 156–157 (1991). This in turn may mean that, in the context of a check payment, there is now less need to precisely date the time when a check transfer occurs for purposes of § 547(c)(2). That is, rather than inquiring whether a transfer occurred on the 45th day or the 46th, courts now need only focus on whether the transfer was made in the ordinary course of business. *Id.,*

For the foregoing reasons, the judgment of the Court of Appeals is

Affirmed.

JUSTICE STEVENS, with whom JUSTICE BLACKMUN joins, dissenting.

In my opinion, a "transfer" of property occurs on the date the check is delivered to the transferee, provided that the check is honored within 10 days. This conclusion is consistent with the traditional commercial practice of treating the date of delivery as the date of payment when a payment is made by a check that is subsequently honored by the drawee bank.[1] It is also consistent with the treatment of checks in tax law. A taxpayer may deduct expenses paid by a check delivered on or before December 31 against that year's income even though the drawee bank does not honor the check until the next calendar year.[2] Insofar as possible, it is wise to interpret statutes regulating commercial behavior consistently with established practices in the business community. The custom that treats the delivery of a check as payment

---

at 162. Thus, the relevance of the legislative history, even for purposes of interpreting § 547(c), appears to have been somewhat undermined; given this, it would clearly be inappropriate to extrapolate from that history for purposes of interpreting the scope of §§ 547(b) and 101(54).

[1] See, e. g., Regents of University of New Mexico v. Lacey, 107 N. M. 742, 744, 764 P. 2d 873, 875 (1988) ("[I]f, when the check is delivered, the drawer has funds in the drawee bank to meet it, and the check is honored and paid upon presentment, the conditional nature of the payment becomes absolute and the date of payment will be deemed to have been made as of the date of the original delivery of the check"); 6 R. Anderson, Uniform Commercial Code § 3–802:19, pp. 594–595 (3d ed. 1984) ("When a check is paid, the payment of the underlying debt becomes absolute and it is deemed paid as of the date of the giving of the check").

[2] See, e. g., Clark v. Commissioner, 253 F. 2d 745, 748 (CA3 1958); see also Don E. Williams Co. v. Commissioner, 429 U. S. 569, 572, n. 2, 582–583 (1977). Treasury regulations similarly provide that a charitable contribution is made upon delivery of a check which subsequently clears in due course. Treas. Reg. § 1.170A–1(b), 26 CFR § 1.170A–1(b) (1991).

should not be rejected unless Congress has unequivocally commanded a contrary result. In the Bankruptcy Code, Congress has done no such thing. On the contrary, the Code is entirely consistent with the normal practice.

The definition of the term "transfer" in § 101(54) is plainly broad enough to encompass the conditional transfer of the right to funds in the debtor's bank account that occurs when the debtor delivers a check to a creditor. Section 101(54) defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property . . . ." 11 U. S. C. § 101(54) (1988 ed., Supp. II). A check[3] is obviously a "mode" through which the debtor may "par[t] with property."[4]

Of course, the fact that delivery of a check effects a "transfer" within the meaning of the Code does not answer the question whether the trustee may avoid the transfer by check in this case because § 547(b) only authorizes the trustee to avoid transfers made "on or within 90 days before the date of the filing of the [bankruptcy] petition." 11 U. S. C. § 547(b)(4)(A). That raises the question: When did the "transfer" occur? Section 547(e)(2) provides the answer. It states that for purposes of the preference avoidance section, § 547, a transfer is made:

---

[3] A check is an order, signed by the maker, to the drawee bank to pay the sum stated upon demand. See Uniform Commercial Code § 3–104, 2 U. L. A. 224 (1991).

[4] The fact that "[m]yriad events can intervene between delivery and presentment of the check that would result in the check being dishonored," *ante,* at 399, does not alter this conclusion because § 101(54) expansively defines the term "transfer" to include even conditional modes of parting with property. In my opinion, the delivery of a check effects such a conditional transfer because upon delivery, the transferee receives a conditional right to funds in the bank account of the maker—the condition being acceptance by the drawee bank.

"(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

"(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days . . . ." § 547(e)(2).

The Court interprets this section as supporting its conclusion that the transfer does not occur until the check is honored by the drawee bank because, it reasons, a transfer cannot take effect between the transferor and transferee as long as the transferor retains the ability to stop payment on the check. *Ante*, at 401. But that reasoning is foreclosed by § 101(54), which states that even a conditional transfer is a "transfer" for purposes of the Code. Because delivery of a check effects a conditional transfer from the transferor to the transferee, the "transfer" is made, for purposes of § 547, on the date of delivery, provided that the transfer is "perfected" within 10 days as required by § 547(e)(2).

As the Court of Appeals for the Seventh Circuit recognized, the use of the term "perfected" is "jarring" because the meaning of the word "perfected" is not immediately apparent in this context. *Global Distribution Network, Inc. v. Star Expansion Co.*, 949 F. 2d 910, 913 (1991). "Debtors transfer assets; creditors perfect security interests." *Ibid.* The answer lies in the fact that the term "perfected" has a broader meaning in § 547(e) than it does in the Uniform Commercial Code. Section 547(e)(1)(B) states that "a transfer of . . . property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." Under this definition, a transfer by check is "perfected" when the check is honored because after that time no one can acquire a judicial lien superior to the interest of the transferee.

Thus §§ 101(54) and 547, when read together, plainly indicate that a "transfer" by check occurs on the date the check

is delivered to the transferee, provided that the drawee bank honors the check within 10 days. If, however, the check is not honored within 10 days, the "transfer" occurs on the date of honor.

An additional consideration reinforces this interpretation of the statutory text. The Courts of Appeals are unanimous in concluding that the date of delivery of a check is controlling for purposes of § 547(c), and the Court does not dispute that conclusion for the purposes of its decision today. *Ante,* at 402–403, n. 9. These Courts of Appeals decisions are consistent with the legislative history,[5] which, though admittedly not conclusive, identifies the date of delivery of a check as the date of transfer for purposes of § 547(c).[6] Normally, we assume that the same terms have the same meaning in different sections of the same statute. See, *e. g., Sullivan* v. *Stroop,* 496 U. S. 478, 484 (1990). That rule is not inexorable, but nothing in the structure or purpose of §§ 547(b) and 547(c) suggests a reason for interpreting these adjacent subsections differently.[7]

I would therefore reverse the judgment of the Court of Appeals.

---

[5] Indeed, many of these decisions rely on the legislative history. See, *e. g., In re Continental Commodities, Inc.,* 841 F. 2d 527, 530 (CA4 1988); *In re White River Corp.,* 799 F. 2d 631, 633 (CA10 1986); *O'Neill* v. *Nestle Libbys P. R., Inc.,* 729 F. 2d 35, 37 (CA1 1984).

[6] As the Court recognizes, *ante,* at 401, sponsors of the legislation in the House and Senate made identical statements to this effect.

[7] As the Court of Appeals for the Sixth Circuit cogently explained: "The policy of section 547(b) is to set aside transfers that potentially prefer selected creditors; section 547(c), in turn, defines groups of creditors who are excepted. To give the word 'transfer' a different meaning in these complementary subparts seems inconsistent, unworkable, and confusing." *In re Belknap, Inc.,* 909 F. 2d 879, 883 (1990).