### In re ROSE MARINE, INC., Debtor.

### W. Jan JANKOWSKI, Chapter 7 Trustee, Movant,

### v.

### DIXIE POWER SYSTEMS, Respondent.

#### Bankruptcy No. 86–40143.

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

Dec. 19, 1996.

W. Jan Jankowski, Trustee, Savannah, GA.

Marvin A. Fentress, Savannah, GA, for Respondent.

## ORDER

JOHN S. DALIS, Chief Judge.

W. Jan Jankowski, the Chapter 7 Trustee for Rose Marine, Inc. (hereinafter "Trustee") objects to two secured claims, number 40 and 90, filed by Dixie Power Systems (hereinafter "Dixie").[1] This matter constitutes a core proceeding within this court's jurisdiction pursuant to 28 U.S.C. § 157(b)(1) & (2)(A), (B), (C), (K), (O) and § 1334. The objection is sustained.

On October 23, 1985, Dixie recorded a default judgment against the Debtor from the State Court of Chatham County, Georgia on the General Execution Docket for Chatham County. On October 9, 1985, Dixie garnished the Debtor's checking account at Southern Bank and Trust Co., from which account Southern Bank and Trust Co. remitted $9,461.85 to the Clerk of the State Court. On December 4, 1985, the Clerk remitted this amount, less court costs to Dixie. On February 18, 1986, Rose Marine, Inc. filed this bankruptcy case.

The operational assets of the Debtor were sold at auction, and the proceeds thereof were distributed to the first lienholder, Signet Commercial Credit Corp. (hereinafter "Signet") by order dated October 30, 1991. Dixie did not object to or appeal that order. On February 17, 1995, I approved the Trustee's settlement of adversary proceeding No. 88–4038, a pre-petition claim of Rose Marine against Marine Contracting Corporation, Earl J. Haden, Robert H. Thompson and John Budge (hereinafter collectively "Marine

---

1. At hearing, Dixie's counsel conceded that the claims were duplicates and in post trial brief the Trustee conceded the amount due on claim 90, but continues to dispute the status of the claim as secured.

Contracting Defendants"). The Trustee currently holds over $380,000.00, consisting of the funds collected by the Trustee through this litigation [2]. Dixie asserts a security interest in these funds via its pre-petition judgment lien against the Debtor, asserting that Rose Marine's pre-petition claim against the Marine Contracting Defendants constituted a pre-petition asset of Rose Marine upon the proceeds of which Dixie's judgment lien attached. The Trustee offers two theories in opposition to the attachment of Dixie's judicial lien to the litigation proceeds: 1) that by Dixie's retaining an unavoided preferential transfer (the account garnishment), Dixie's claim is disallowed in toto under 11 U.S.C. § 502(d), and 2) that the Debtor's right of action against the Marine Contracting Defendants constituted a chose in action to which Dixie's judgment lien could not attach under state law.

■ Pursuant to 11 U.S.C. § 502(d) [3], the court shall disallow the claim of a creditor who retains funds obtained via a voidable transfer, including preferential transfers under 11 U.S.C. § 547(b).[4] The Trustee asserts that Dixie's garnishment constitutes a preferential transfer, subjecting Dixie's claim to disallowance. The Trustee concedes that the default judgment, the service of the garnishment summons, and the removal of funds from the Debtor's checking account all occurred outside the ninety day preference period. However, Dixie received the garnished funds within the preference period, and the Trustee asserts that this transfer date is definitive for preference analysis, citing *Barnhill v. Johnson,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). The Supreme Court in *Barnhill* ruled that the decisive transfer date for preference analysis arises on the date a check is honored, not on the date the creditor received the check from a debtor. *Id.* at 399, 112 S.Ct. at 1390. The Trustee attempts to analogize the instant case to the *Barnhill* decision, asserting that the transfer date for preference purposes is the date Dixie received the garnishment funds from Chatham County. However, a garnishment transfer is fundamentally different from a payment by a check. Under the Bankruptcy Code, " '[t]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property …". 11 U.S.C. § 101(54). A transfer of non-realty is perfected " … when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B). The time at which this perfection of a transfer occurs is determined by state law. *Palmer v. Radio Corp.,* 453 F.2d 1133, 1138 (5th Cir.1971). Under Georgia law, the perfection of a transfer by garnishment occurs upon service of the garnishment summons. *Askin Marine Co. v. Conner (In re Conner),* 733 F.2d 1560 (11th Cir.1984) (A

**2.** By an Order dated December 28, 1995, $400,-000.00 of the settlement proceeds were paid to Signet in satisfaction of secured, priority and super priority claims against the estate. Dixie did not object to the settlement nor to the disbursement of these funds.

**3.** 11 U.S.C. § 502(d) provides in part:
(d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

**4.** 11 U.S.C. § 547(b) provides:
Except as provided in subsection (c) of this section, the trustee may avoid any transfer of any interest of the debtor in property—

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was solvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

"transfer" for preference analysis occurs on the date the creditor serves the garnishee with a summons of garnishment, not on the date funds are distributed to the creditor.)

The Supreme Court's decision in *Barnhill* does not contradict the Eleventh Circuit's holding in *Askin Marine*. Two facts critical to the Supreme Court's analysis in *Barnhill* distinguish it from *Askin Marine* and the instant case: 1) the debtor continued to hold rights in the checking account funds between the date the creditor received the check and the date the bank honored the check and withdrew the funds from the account; and 2) a judgment lien created between the date of delivery of the check and the date the drawee bank honored the check would take priority over the check payee's right to the checking account funds. *Barnhill* at 399, 112 S.Ct. at 1390. Under Georgia law, the Debtor loses its ability to withdraw the account funds when the garnishment summons is served, not when the court clerk remits the funds to the creditor. Furthermore, a subsequent judgment creditor cannot obtain a superior lien against the account after the garnishment summons is served. The transfer of funds to Dixie therefore occurred beyond the ninety-day preference period, removing Dixie's claim from disallowance under § 502(d).

■ The Trustee also argues that under Georgia law the Debtor's pre-petition claim against the Marine Contracting Defendants constitutes a chose in action and that Dixie's pre-petition lien never attached to this asset or its settlement proceeds. Under Georgia law, "[a] chose in action is personalty to which the owner has a right of possession in the future or a right of immediate possession which is being wrongfully withheld." O.C.G.A. § 44–12–20. The Debtor's pre-peti-

tion claim against the Marine Contracting Defendants falls within this definition. *See, Anderson v. Burnham (In re Burnham)*, 12 B.R. 286, 294 (Bankr.N.D.Ga.1981) (A debt is a chose in action as it is personalty which the person to whom the debt is owed has a right of immediate or future possession, and if possession is wrongfully withheld an action may be brought thereon.)

■ Under Georgia law, "[c]hoses in action are not liable to be seized and sold under execution, unless made so specially by statute." O.C.G.A. § 9–13–57. Therefore, a creditor's judgment lien does not attach to a chose in action except by way of summons of garnishment. *See, Phillips & Jacobs, Inc. v. Color–Art, Inc.*, 553 F.Supp. 14, 16 (N.D.Ga. 1982); *General Lithographing Co. v. Sight & Sound Projectors, Inc.*, 128 Ga.App. 304, 196 S.E.2d 479 (1973). Because Dixie did not file a pre-petition garnishment action against the chose in action, its judgment lien did not attach thereto, leaving the proceeds of the adversary proceeding free of Dixie's judicial lien, and as there are no other assets, leaving Dixie an unsecured creditor.

It is therefore ORDERED that the Trustee's objection to Claim 40 is sustained, and the same is hereby stricken.

It is further ORDERED that the Trustee's objection to Claim 90 is sustained, and Dixie's secured claim is hereby reduced to general unsecured status.