In re M GROUP, INC., Debtor.

Larry Waslow, in his capacity as Unsecured Claims Administrator of M Group, Inc., Plaintiff,

v.

Dover Findings, Inc., Defendant.

Bankruptcy No. 00–1936–JKF.
Adversary No. 02–3324–JKF.

United States Bankruptcy Court, D. Delaware.

Jan. 20, 2005.

Bradford J. Sandler, Adelman, Lavine, Gold and Levin, PC, Duane David Werb, Werb & Sullivan, Wilmington, DE, for Larry Waslow, in his capacity as Unse-cured Claims Administrator of M Group, Inc.

Joanne Bianco Wills, Stephanie Ann Fox, Steven K. Kortanek, Klehr, Harrison, Harvey, Branzburg & Ellers, Victoria Watson Counihan, Greenberg Traurig, LLP, Wilmington, DE, for The Monet Group, Inc.

Jeffrey Philip Wasserman, Ciconte, Roseman & Wasserman, Wilmington, DE, for Dover Findings.

## MEMORANDUM OPINIONS [1]

JUDITH K. FITZGERALD,
Bankruptcy Judge.

Before the court are cross motions for summary judgment regarding avoidance and recovery of preferential transfers. In his complaint, the Unsecured Claims Administrator of the Debtor's estate ("UCA") asserts that within ninety days prepetition the Debtor issued checks totalling $24,027.34 to Dover Findings and that these payments constituted preferential transfers that are avoidable under 11 U.S.C. § 547.[2] The UCA asserts in his brief in support of his motion that "[t]he *invoices* attached as Exhibit 'B' show that the Transfers at issue were made on a debt that was antecedent pursuant to § 547(b)(2) because the Debtors' obligations were incurred before the Debtor made the Transfers". Dkt. No. 11 at 5 (emphasis added). In support of his motion the UCA attached checks dated from February 11, 2000, to April 7, 2000. The bankruptcy was filed on May 11, 2000. The UCA also attached invoices which he says correspond to checks dated

2/11/00

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. In his motion for summary judgment the UCA asserts that Debtor made payments in the form of "checks and/or wire transfers". The evidence submitted includes only checks and invoices.

2/18/00
3/03/00
3/10/00
3/17/00
3/31/00
4/7/00

*See* Exhibit A to Dkt. No. 11. However, it is impossible to read the copy of that portion of the invoices submitted on the same page as the copies of the checks because the copies are too faint to read the dates, invoice numbers, amounts, and other information printed thereon.[3] Furthermore, included in Exhibit A are the fronts and backs of only two cancelled checks:

| Check No. | Date of Check | Date Check Paid | Amount |
|---|---|---|---|
| 290747 | March 31, 2000 | April 5, 2000 | $9,379.10 |
| 291012 | April 7, 2000 | April 17, 2000 | $1,197.02 |

At Exhibit B to his brief the UCA included invoices related to the transfers dated from November 17, 1999, to April 26, 2000. However, the only evidence with respect to dates payments were actually made, determined by the evidence of the dates the checks were paid by the bank, are the checks dated March 31 and April 7 referred to above.[4] *See Barnhill v. Johnson,* 503 U.S. 393, 394–95, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992)(for preference purposes, the date the drawee bank honors a check is the date the transfer is deemed to have been made).

With respect to its motion for summary judgment, Dover Findings provided as Exhibit A to the Supplemental Affidavit of Bruce Harris, CEO and founder of Dover Findings, Dkt. No. 16, checks and invoices dated from February 11, 2000, to March 17, 2000, including those checks dated March 31 and April 7 that the UCA relies on. With respect to the March 31 check,

check number 290747 in the amount of $9,379.10, Dover Findings presents invoices totalling over $5,500 which amount does not approach the $9,379.10 for which the check was issued. With respect to the April 7 check, check number 291012 in the amount of $1,197.02, Dover Findings attaches two invoices, the total of which corresponds to the amount of the check.

Dover Findings also provided a chart captioned "Monet Group Payment Record". *See* Dkt. No. 16, Exhibit B to Supplemental Affidavit of Bruce Harris. This chart lists the posting date (presumably of the invoices), document type (invoice or payment), document number, amount of invoice, amount paid, and the due date of the payment. There is nothing in the record to establish whether the "amount paid" stated on the Payment Record was actually paid on the date the check was issued, the date Dover Findings received payment, or the date the checks cleared the bank. However, with respect to those invoices listed on the Payment Record as having a payment date of April 5, 2000, the same date that check number 290747 cleared the bank, the total amount of the invoices, as well as the invoice numbers, is consistent with the other evidence that check number 290747 dated March 31, 2000, and paid by the bank on April 5, 2000, totalled $9,379.10. The Payment Record contains no reference to a payment on April 17. It does, however, refer to payments on April 14, 2000, but the invoice number of only one of the two invoices Dover Findings lists as paid on April 14 corresponds to the invoices listed by the UCA as paid by the check that cleared on April 17, check number 291012.

---

**3.** In some instances holes punched for insertion of the documents into a three-ring binder cut through information printed on the document.

**4.** We note that except for the checks dated March 31 and April 7, there is no evidence of the dates any of the checks were paid.

Based on the foregoing, the only conclusive evidence presented to the court of a preferential payment is that represented by check number 290747 dated March 31, 2000, and paid April 5, 2000, in the amount of $9,379.10. This amount will constitute an avoidable preference unless Dover Findings can establish that the payment was in the ordinary course of the parties' business or financial affairs and according to ordinary business terms. 11 U.S.C. § 547(c)(2)(B), (C). We find that Dover Findings has not established this defense.

In its answer to the complaint, Dover Findings denies that the elements of a preferential transfer except that the payments were made within the 90 days prepetition. In its cross motion for summary judgment, Dover Findings states that "the Transfers are not preferential because they were made in the ordinary course of business under 11 U.S.C. § 547(c)(2)." Dkt. No. 14 at ¶ 11.[5]

■ The elements necessary for the "ordinary course of business" exception to apply are provided in 11 U.S.C. § 547(c)(2):

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

The transferee herein, Dover Findings, has the burden of proving these three elements. 11 U.S.C. § 547(g). *See also In re First Jersey Securities, Inc.,* 180 F.3d 504, 512 (3d Cir.1999); *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.,* 891 F.2d 66, 69–70 (3d Cir.1989).

■ The first prong of the test is not in dispute. The second prong requires that the dealings between the parties during the preference period be consistent with the prior practice between the parties. There is insufficient evidence of the parties' course of dealing before the preference period. The UCA provided invoices dating from November 1999, about three months before the preference period began. Dover Findings provided invoices from December 1999. They both provided the fronts of the same checks, including check numbers 290747 and 291012, but the parties' evidence of the number of invoices with respect to most of the checks differs and there is evidence of the date of payment only with respect to check numbers 290747 and 291012. There is no other evidence of the parties' course of dealing except the affidavit of Bruce Harris, Dover Findings' CEO and founder. *See* Dkt. No. 14.

In his affidavit Mr. Harris states:

5. Dover Findings and M Group entered into transactions during the period of 3/99 and 4/00 in which Dover Findings manufactured and shipped unique jewelry supplies to M Group for the production of costume jewelry.

---

**5.** With a letter filed by Dover Findings after the motion for summary judgment and responses and replies were filed, Dover Findings submitted the UCA's response to Dover's first set of interrogatories to establish that there is no dispute regarding Dover's new value defense. *See* Dkt. No. 16. Inasmuch as neither party addressed the new value issue in their motions for summary judgment, we do not address it here. The only issues presented by the motions for summary judgment are those concerning the ordinary course defenses.

6. During the period between 3/99 and 4/00, Dover Findings sent invoices to M Group in which payment was requested within thirty days subsequent to the receipt of shipment.

7. During the pre-preference period from 3/99 to 1/00, M Group submitted a total of 82 payments, with a median of 36 days late and a mean of 38 days late. The payments ranged from 22 days after invoice to 92 days after invoice.[6]

8. During the alleged preference period, from 2/00 to 4/00, M Group submitted a total of 19 payments, with a median of 30 days late and a mean of 39 days late. The payments ranged from 16 days after invoice to 39 days after invoice.

*See also* Dkt. No. 16, Exh. B to Letter Filed by Dover Findings. However, as noted above, except for the payments made by check numbers 290747 and 291012, the actual dates of payment (i.e., the date the drawee bank honored the checks) cannot be determined. Furthermore, neither party presented evidence of checks issued or paid during the pre-preference period. Therefore, the probative value of Dover Findings' evidence of the mean and median number of days for payment is insufficient to support its defense.[7] As stated earlier, the only conclusive evidence of preferential transfer relates to the check that was paid on April 5, check number 290747. With respect to the check paid on April 17, the parties' evidence of the invoices paid by that check is inconsistent. As noted above, the Payment Record provided by Dover Findings is insufficient. Accordingly, there is no evidence of what constituted the "ordinary course of business or financial affairs" of the Debtor and Dover Findings. 11 U.S.C. § 547(c)(2)(B).

■ Because Dover must satisfy both § 547(c)(2)(B) and (c)(2)(C) in order to establish that the transfers are not avoidable, we need not examine its evidence of the industry standards under (c)(2)(C) in detail. We note, however, that that evidence, contained in Mr. Harris's affidavit, is also insufficient. *See* Dkt. No. 14 at ¶¶ 9–15. Although his testimony establishes a long course of dealing in the industry, he neither identifies other companies nor what standard companies other than Dover Findings use with their customers.[8]

---

**6.** The record establishes that the payment that was 92 after invoice and one other very late payment were aberrations. Without the two atypically late payments, the pre-preference range was 22 to 52 days.

**7.** To the extent the mean and median statistics have any probative value they show that payments made in the pre-preference period ranged from between 22 and 52 days from the date of invoice (but see note 6 above) and in the preference period that the range was 16 to 39 days. We find the difference in range between the pre-preference and the preference periods to be significantly different (a range of six to thirteen days' difference) to establish that preferential transfers occurred. However, as stated, because it is not known what date Dover Findings is relying on as the date of payment, the statistics it provides are not meaningful for purposes of this preference analysis.

**8.** He states in his Affidavit the following:

"9. Typically, in the jewelry manufacturing industry, the jewelry supply manufacturer ships supplies to the costume jewelry creator.

10. Within the standard practice of the jewelry manufacturing industry, the jewelry supplier sends an invoice to the costume jewelry creator requesting payment within thirty days subsequent to receipt of the shipment.

11. In the jewelry manufacturing industry, the costume jewelry creator ships the costume jewelry to retail stores where the jewelry is sold to the public.

12. Within the standard practice of the jewelry manufacturing industry, the retail stores most often pay costume jewelry manufactures [sic] up to 180 days after receipt of shipment.

13. Typically, in the jewelry manufacturing industry, the costume jewelry creator

He provides only a general statement of what is done in the jewelry manufacturing industry.[9]

The evidence supports a finding that a preferential transfer was made in the amount of $9,379.10. An appropriate order will be entered.[10]

## JUDGMENT ORDER GRANTING, IN PART, MOTION FOR SUMMARY JUDGMENT FILED BY LARRY WASLOW AND DENYING CROSS MOTION FOR SUMMARY JUDGMENT FILED BY DOVER FINDINGS, INC.

**AND NOW,** this 20th day of January, 2005, it is **ORDERED, ADJUDGED and DECREED** that the motion for summary judgment filed by Larry Waslow in his capacity as Unsecured Claims Administrator of M Group, Inc., is **GRANTED,** in part, as stated below.

It is **FURTHER ORDERED** that the cross motion for summary judgment filed by Dover Findings, Inc., is **DENIED**.

It is **FURTHER ORDERED** that judgment is entered for the Unsecured Claims Administrator of M Group, Inc., and against Dover Findings, Inc. in the amount of $9,379.10, plus interest as of the date of this Judgment.

It is **FURTHER ORDERED** that pretrial narratives, listing all witnesses and with copies of all exhibits (legible, fronts and backs), premarked for identification, shall be filed and served by each party, with paper copies delivered to the undersigned in Pittsburgh in binder format, on or before **Thursday, March 10, 2005. No extensions will be granted.**

It is **FURTHER ORDERED** that trial is set for **Thursday, March 24, 2005,** at **1:00 a.m.,** Courtroom A, U.S. Steel Tower, 600 Grant Street, Pittsburgh, Pennsylvania. Each side has two hours to present its case in chief and any rebuttal. Four hours, total, is reserved for trial.

does not pay the supplier within the date requested on the invoice as a result of the delay in payment from the retail stores. 14. The billing practices between M Group and Dover Finding conformed with the standard billing practices of the jewelry manufacturing industry."
Dkt. No. 14, Affidavit of Bruce Harris at ¶¶ 9 through 14.

9. We note that the UCA did not attempt to rebut Dover's witness. Dover's evidence, therefore, is uncontested. Nonetheless, it is not sufficient to satisfy § 547(c)(2)(C).

10. We note that it took many, many hours, to sort out the muddled evidence presented by the parties due to the incomplete nature of the documentation (even thought the parties have the necessary documentation and could have provided it) and the incomprehensible format in which it was presented. In the future, the court will simply deny the motion and set the matter for trial, which would substantially lessen the burden on this court, rather than attempt to sort through this kind of record.