TASHIMA, Circuit Judge:
 

 The United States appeals the order of the district court affirming the bankruptcy court’s grant of summary judgment in fa
 
 *1048
 
 vor of the trustee who brought suit for recovery of a tax refund under 26 U.S.C. § 7422. In claiming a tax refund on behalf of the debtors’ estate, the trustee sought to avoid, pursuant to 11 U.S.C. § 549, the debtors’ consent to the filing of a consolidated tax return with their common parent corporation and the parent corporation’s election under 26 U.S.C. § 172 to relinquish the carryback period for net operating losses attributable to the debtors. We hold that the bankruptcy trustee’s action is barred by the statute of limitations applicable to her avoidance powers under § 549, notwithstanding that she seeks to exercise that authority in the context of a § 7422 tax refund suit. We therefore reverse.
 

 I. BACKGROUND
 

 In early 1989, Maryland Investments, Inc. (“Maryland”) gained 100 percent ownership of all stock in Home America T.V.Appliance Audio, Inc. (“Home America”). Several months later, on September 6, 1989, creditors filed an involuntary bankruptcy petition against Home America under Chapter 7 of the Bankruptcy Code. Home America’s two wholly-owned subsidiaries, J.G. Boyd T.V.-Appliance Audio, Inc. (“J.G. Boyd”) and Charleston T.V.
 
 &
 
 Appliance Co. (“Charleston”), were subsequently included in the bankruptcy proceeding by order of the bankruptcy court.
 
 [1]
 
 Before an order for relief was filed and a trustee was appointed (during the “gap period”), the Debtors consented to the filing of a consolidated tax return with their common parent, Maryland, for the three-month period from April 1, 1989 to June 30,1989.
 
 See
 
 26 U.S.C. § 1501.
 
 [2]
 

 On the consolidated return, Maryland elected to waive the carryback period for net operating losses attributable to the Debtors pursuant to the provisions of 26 U.S.C. § 172. Section 172 of the Internal Revenue Code (“IRC”) defines net operating losses (“NOLs”) generally as the amount by which deductions exceed gross income.
 
 See
 
 26 U.S.C. § 172(c). Under the IRC in effect in 1989, § 172 provided that a NOL may be carried back to offset income during the three years preceding the year of the loss, and then, to the extent the loss was not fully absorbed by the taxpayer’s income in the carryback years, it was to be carried forward to each of the 15 years following the year of the loss.
 
 [3]
 
 The IRC, however, also contains a waiver provision whereby the taxpayer may irrevocably elect to relinquish the carryback period with respect to a NOL for any taxable year, thereby using the loss to offset income only in future years.
 
 See
 
 26 U.S.C. § 172(b)(3).
 
 [4]
 
 Thus, rather than using the NOLs attributable to the Debtors to offset the Debtors’ income in prior years, thereby reducing the Debtors’ tax liability for those years, Maryland elected to relinquish the carryback period and to carry forward the NOLs to later tax years
 
 *1049
 
 only after the Debtors had entered bankruptcy.
 

 On September 22, 1989, Wenda K. Shal-try (“Trustee”) was appointed the Chapter 7 trustee for the Debtors. On May 24, 1991, the Trustee filed an amended tax return on behalf of the Debtors for the tax years 1986, 1987, and 1989, asserting her authority to avoid their consent to the consolidated return and the gap period election by Maryland in order to utilize the relinquished NOLs to claim a refund of approximately $1.6 million on behalf of the Debtors’ estate.
 
 [5]
 
 By letter dated September 17, 1991, the Internal Revenue Service (“IRS”) informed the Trustee that “[i]n response to your request for prompt audit of the income tax return identified above, we are pleased to tell you that your return has been accepted as filed.” One week later, on September 24, 1991, the Trustee filed an adversary proceeding in the bankruptcy court against the United States for the refund of federal income taxes claimed on the amended return.
 
 [6]
 

 The Trustee also contemporaneously filed suit against the Debtors’ common parent corporation, asserting Maryland’s liability to the Debtors’ estate for the relinquished carryback of the Debtors’ NOLs. On December 12, 1991, the Trustee entered into a settlement agreement (“Settlement”) addressing claims by and against various creditors, including the Trustee’s suit against Maryland. The Settlement noted that “[t]he IRS has not yet approved or denied” the tax refund claim filed in May of that year, but it provided for distribution among the creditors, including Maryland, of any proceeds resulting from the claim. Maryland agreed to “take no action to prevent or impair the Trustee” from collecting the full amount of the refund on behalf of the Debtors’ estate. On September 24, 1992, however, the IRS sent the Trustee notice of disallowance, stating that the tax refund claim had not been proven valid and that any refund suit would have to be filed within two years from the mailing date of the letter.
 

 After the Trustee initiated a second adversary proceeding for the tax refund in January, 1998, see note 6,
 
 supra,
 
 both the government and the Trustee moved for summary judgment. In April, 1994, the bankruptcy court granted summary judgment in favor of the Trustee. On appeal, the district court vacated and remanded, ruling that Maryland should have been joined as a party under Federal Rule of Civil Procedure 19(a). The Trustee subsequently filed an amended complaint joining Maryland as a party to the suit. Upon cross-motions for summary judgment by the Trustee and the government, the bankruptcy court once again ruled for the Trustee and granted the tax refund on behalf of the Debtors’ estate. In so doing, the bankruptcy court rejected the government’s argument that the Trustee’s action was time-barred by 11 U.S.C. § 549(d). The district court affirmed the decision of the bankruptcy court, and the United States filed timely notice of appeal. We have jurisdiction under 28 U.S.C. § 158(d), and we reverse.
 

 
 *1050
 
 II. STANDARD OF REVIEW
 

 This court reviews the district court’s decision on an appeal from a bankruptcy court de novo.
 
 See Preblich v. Battley,
 
 181 F.3d 1048, 1051 (9th Cir.1999). We also review a bankruptcy court’s grant of summary judgment de novo.
 
 See In re Filtercorp, Inc.,
 
 163 F.3d 570, 578 (9th Cir.1998).
 

 III. DISCUSSION
 

 The government contends that the Trustee’s authority under 11 U.S.C. § 549 does not allow her to avoid the Debtors’ consent to the filing of a consolidated tax return and Maryland’s election to relinquish the carryback period with respect to the Debtors’ NOLs, which are “irrevocable” under the IRC. Although this court has recently addressed the apparent conflict between an “irrevocable” election under 26 U.S.C. § 172(b)(3) and a trustee’s broad avoidance powers under Bankruptcy Code § 548 (dealing with fraudulent transfers),
 
 see United States v. Sims (In re Feiler),
 
 218 F.3d 948, 956-57 (9th Cir.2000) (holding that an irrevocable election under § 172(b)(3) of the IRC is nonetheless avoidable when the requirements of a fraudulent transfer under § 548 have been met), we need not address the analogous issue here. Because we conclude that the Trustee’s ability to exercise her avoidance authority is barred by the statute of limitations under 11 U.S.C. § 549(d), we do not reach the merits of her refund claim.
 

 A. Applicability of 11 U.S.C. § 549(d)
 

 Section 549(d) of the Bankruptcy Code states:
 

 An action or proceeding under this section may not be commenced after the earlier of—
 

 (1) two years after the date of the transfer sought to be avoided; or
 

 (2) the time the case is closed or dismissed.
 

 11 U.S.C. § 549(d). The Trustee contends that her action is for the recovery of a tax refund pursuant to 26 U.S.C. § 7422 and therefore is governed by the statute of limitations for such suits, not by the two-year limitations period of § 549(d). The IRC includes two limitations periods for refund actions, one for filing an administrative claim and one for filing a suit for refund. When a taxpayer claims a refund from the carryback of a NOL, the taxpayer must file an administrative claim within three years from the due date for filing the return for the taxable year of the NOL.
 
 See
 
 26 U.S.C. § 6511(d)(2). The taxpayer must then file a suit for refund within two years from the date the IRS mails a notice of disallowance of the claim by certified or registered mail.
 
 See
 
 26 U.S.C. § 6532(a).
 

 In this case, the government concedes that the Trustee timely filed an administrative claim for recovery of a tax refund on May 24, 1991, and timely filed suit for a refund once the IRS mailed a notice of disallowance on September 24, 1992. The government points out, however, that, although the Trustee may have brought a timely tax refund suit, recovery of the refund is predicated upon exercise of her avoidance powers pursuant to 11 U.S.C. § 549. Unless the Trustee can avoid the Debtors’ consent to the filing of a consolidated tax return and Maryland’s election to relinquish the carryback period for the Debtors’ NOLs, there is no basis for a tax refund based on those NOLs for the Debtors’ estate. The statute of limitations applicable to refund actions, according to the government, is thus relevant only if the Trustee first can avoid, pursuant to § 549, an otherwise irrevocable election made under the provisions of 26 U.S.C. § 172.
 

 The Trustee maintains that because this suit is an action for recovery of a tax refund under 26 U.S.C. § 7422 — not an action to recover a postpetition transfer pursuant to the bankruptcy laws — she cannot be barred by the statute of limitations under Bankruptcy Code § 549(d). Relying on
 
 Gibson v. United States (In re Russell),
 
 927 F.2d 413 (8th Cir.1991), the Trustee attempts to characterize her entire action as one for a tax refund and consequently to demonstrate the inapplica
 
 *1051
 
 bility of the § 549(d) time limitation.
 
 See id.
 
 at 417 (“The theory underlying the refund suit may involve a § 549 unauthorized post-petition transfer, but that does not make it a § 549 suit, and therefore § 549’s statute of limitations is inapplicable.”). We do not find such reasoning persuasive.
 

 The Trustee’s action involves two distinct steps — first, avoidance of the Debtors’ consent to the consolidated return and of Maryland’s election to relinquish the NOLs via § 549; and second, recovery of a tax refund for the bankruptcy estate based on those NOLs under § 7422. In other words, the claim for a refund is futile unless the Trustee is successful in her affirmative claim to avoid the transfer under § 549.
 
 [7]
 

 See id.
 
 at 419 (Gibson, J., dissenting) (“The critical failing of the court’s argument is that a necessary predicate for the tax refund suit is the trustee’s attempt to avoid the taxpayer’s election to carry forward net operating losses. Without avoidance of this election, there is no tax refund claim.”);
 
 cf. Smith v. Mark Twain Nat’l Bank,
 
 805 F.2d 278, 292-94 (8th Cir.1986) (holding that a certificate was not subject to turnover under 11 U.S.C. § 542 unless the trustee first exercised his avoidance powers under 11 U.S.C. § 549, and indicating that, absent estoppel, the § 549(d) statute of limitations would have been applicable).
 

 Because this action cannot be characterized as one only for a tax refund when the refund claim itself is predicated upon the Trustee’s affirmative exercise of her avoidance powers, the statute of limitations of § 549(d) is applicable here. Nor do considerations of public policy suggest otherwise once the avoidance claim and the refund claim are conceptually untangled. The two claims are separate and distinct, except that in this case the latter is predicated upon the validity of the former. Although the Debtors’ estate’s tax refund depends upon the Trustee’s avoidance of the antecedent consent and election, we do not have license to conflate the two claims by applying the statute of limitations from the IRC to the Trustee’s exercise of her authority under the bankruptcy laws.
 

 B. Trustee is time-barred from exercising her avoidance powers
 

 Under § 549(d), the Trustee had two years from the date of the “transfer sought to be avoided” to commence an avoidance proceeding. She initiated the first adversary proceeding on September 24,1991. The bankruptcy court found that the consolidated tax return was filed on September 19, 1989, the date it was received by the IRS.
 
 [8]
 
 Because the Trustee did not commence an action to exercise her avoidance powers until September 24, 1991 — more than two years after the transfer,
 
 i.e.,
 
 the date the return was filed, on September 19, 1989 — the
 
 action
 
 is barred by the limitations period of § 549(d).
 

 1.
 
 Waiver
 

 The Trustee contends on appeal that the date of filing under the IRC is not
 
 *1052
 
 necessarily the same as the date of transfer for the purposes of 11 U.S.C. § 549(d). Relying on
 
 Spear v. CEMA Distrib. (In re Rainbow Music, Inc.),
 
 154 B.R. 559, 561-62 (Bankr.N.D.Cal.1993), which held that a check is not transferred for purposes of § 549 until is it honored, the Trustee argues that the tax return was not transferred as a matter of law until it was received and processed by the IRS. As the Trustee notes, the government did not offer any evidence below as to when it actually processed the consolidated tax return relinquishing the carryback period for the Debtors’ NOLs. There is no indication in the record, however, that the Trustee presented this argument before either the bankruptcy court or the district court. We therefore find the argument waived and express no view as to its merit.
 
 See Alexopulos v. Riles,
 
 784 F.2d 1408, 1411 (9th Cir.1986) (holding that plaintiffs tolling argument was waived for failure to raise the issue in opposition to summary judgment even though the general statute of limitations issue had been briefed).
 

 This court has recognized that “absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so.”
 
 El Paso City v. America West Airlines, Inc. (In re America West Airlines, Inc.),
 
 217 F.3d 1161, 1165 (9th Cir.2000). Exceptional circumstances exist when: (1) review will prevent a “miscarriage of justice”; (2) a change in the law raises a new issue pending appeal; and (3) “the issue presented is purely one of law and either does not depend upon the factual record developed below, or the pertinent record has been fully developed.”
 
 Marx v. Loral Corp.,
 
 87 F.3d 1049, 1055 (9th Cir.1996). None of these exceptional circumstances exists here. Although determination of the appropriate date of transfer from which to measure the limitations period under § 549(d) is purely a matter of law, the factual record has not been developed below as to when the tax return was actually processed. Because the United States would be prejudiced by not having had the opportunity to so develop the record if we were to entertain the Trustee’s new argument on appeal, this case is not appropriate for such exercise of our discretion.
 
 See United States v. Gabriel,
 
 625 F.2d 830, 832 (9th Cir.1980) (“This exception necessarily applies only when the party against whom the issue is raised would not be prejudiced and would not have tried his case differently either by developing new facts in response to or advancing distinct legal arguments against the issue.”).
 

 2.
 
 Equitable Estoppel
 

 The principles of equitable estoppel do not prevent the government from asserting that the Trustee’s exercise of her avoidance powers is barred by the statute of limitations under § 549(d). The Trustee points to two communications from the government in arguing for estoppel: (1) the September 17, 1991, letter stating that the Trustee’s return had been accepted as filed; (2) the September 24, 1992, notice of disallowance stating that the Trustee had two years from the date of mailing to file suit. Neither communication supports a finding of equitable estoppel.
 

 With respect to the letter of September 17, 1991, the IRS properly considered the Trustee’s amended return as a claim for a refund but did not address the separate and distinct avoidance claim upon which the refund action was necessarily predicated. Moreover, an informal letter from the IRS that a return has been accepted as filed has no conclusive bearing on whether a claim for a refund is ultimately granted.
 
 See Shumaker v. Commissioner,
 
 648 F.2d 1198, 1199-1200 (9th Cir.1981) (“Neither the informal acceptance of Shumaker’s amended returns nor the adjustments to his tax crediting him with the amount in controversy constitute a binding agreement under the tax laws.”). This understanding would appear to be confirmed by language in the subsequent Settlement entered by the Trustee on December 12, 1991, which noted that “[t]he IRS has not
 
 *1053
 
 yet approved or denied” the tax refund claim.
 

 The Trustee, however, points to cases holding that taxpayers may rely on the written, and even oral, representations of IRS employees.
 
 See, e.g., Haber v. United States,
 
 831 F.2d 1051, 1053-54 (Fed.Cir.1987) (taxpayer had right to rely on IRS oral representation to taxpayer’s accountant that prior notice of disallowance had been withdrawn, so that later notice of disallowance initiated period for filing refund suit). There is nothing in the record here, however, to suggest that the Trustee actually relied upon the letter of September 17 in deciding not to file suit before September 19 — when the two year statute of limitations under § 549(d) expired — but nevertheless deciding to file suit a week later on September 24,1991.
 
 See Watkins v. United States Army,
 
 875 F.2d 699, 709 (9th Cir.1989) (en banc) (noting requirement that party seeking estoppel is required to show that he relied to his detriment on conduct of the party that is to be estopped). Similarly, the Trustee could not possibly have relied on the September 24, 1992, notice of disallowance in missing the deadline for claiming avoidance under § 549 when that letter was sent more than a year after the deadline had passed (because, of course, that notice referred solely to the refund claim, as opposed to the predicate avoidance claim that was already barred). For the foregoing reasons, we conclude that equitable estoppel does not apply.
 

 IV. CONCLUSION
 

 The Trustee’s tax refund claim under 26 U.S.C. § 7422 is predicated upon the exercise of her avoidance powers pursuant to 11 U.S.C. § 549. Because she cannot satisfy the § 549(d) statute of limitations, which governs avoidance actions, she is time-barred from exercising that authority. We therefore reverse the district court’s judgment with directions that it reverse the bankruptcy court’s grant of summary judgment in favor of the Trustee and remand with directions to enter judgment in favor of the government.
 

 REVERSED and REMANDED.
 

 [1]
 

 . Home America, J.G. Boyd, and Charleston are collectively referred to as the "Debtors.”
 

 [2]
 

 . The exact date the consolidated return was "filed” is in dispute and will be discussed below as it relates to the statute of limitations issue upon which we base our decision.
 

 [3]
 

 . The carryback period of § 172 has since been reduced to two years, and the carry forward period has been extended to 20 years.
 
 See
 
 Taxpayer Relief Act of 1997, Pub.L. 1 OS-34, § 1082(a)(l)-(2).
 

 [4]
 

 . Under the IRC in effect in 1989, this provision read as follows:
 

 Any taxpayer entitled to a carryback period under paragraph (1) may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year ending after December 31, 1975. Such election shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date (including extensions of time) for filing the taxpayer’s return for the taxable year of the net operating loss for which the election is to be in effect. Such election, once made, shall be irrevocable for that taxable year.
 

 26 U.S.C. § 172(b)(3)(C).
 

 The provision has since been recodified at 26 U.S.C. § 172(b)(3), with minor changes.
 
 See
 
 Revenue Reconciliation Act of 1990, Pub.L. 101-508, § 11811(a).
 

 [5]
 

 . Although the Trustee has asserted her avoidance authority under several different sections of the Bankruptcy Code at various points during the course of this litigation, the section relevant to this appeal is 11 U.S.C. § 549, which provides for a trustee's general avoidance powers with respect to postpetition transactions:
 

 Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
 

 (1) that occurs after the commencement of the case; and
 

 (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
 

 (B) that is not authorized under this title or by the court.
 

 11 U.S.C. § 549(a).
 

 [6]
 

 . The bankruptcy court initially dismissed this complaint without prejudice in December 1992, but later reinstated the action in June 1993 upon the Trustee’s motion for reconsideration. In the interim, the Trustee filed a second complaint seeking identical relief on January 12, 1993. Both adversary proceedings have since been consolidated and are herein treated as a single case.
 

 [7]
 

 . Because the tax refund claim here is predicated upon an affirmative claim of avoidance under § 549, this case is easily distinguishable from
 
 Committee of Unsecured Creditors v. Commodity Credit Corp. (In re KF Dairies, Inc.),
 
 143 B.R. 734 (9th Cir.BAP1992). That decision held that 11 U.S.C. § 502(d) operates to disallow claims of transferees who do not surrender an avoidable transfer, even though the grounds for claim objection may be furnished by an avoidance cause of action that would otherwise be time-barred under § 549(d).
 
 Id.
 
 at 737 (“The time-bar language in section 549(d) appears to contemplate application only to adversary proceedings seeking affirmative relief. Application of the time-bar to objections based on section 502(d) would undercut ... the general rule that statutory time-bars are inapplicable to matters of defense, where no affirmative relief is sought.’’).
 

 [8]
 

 . The government asserts that the return was filed, and hence the transfer occurred, on the date that the return was sent by certified mail to the IRS, September 14, 1989. Because use of the later date of September 19 results in a decision in the government’s favor, we need not address this assertion.