MEMORANDUM *
Appellant Philips BTS (“Philips”) appeals the district court’s order affirming the bankruptcy court’s order granting summary judgment in an adversary proceeding in favor of Debtor-Appellee Matthews Studio Equipment Group (“Matthews”).[1] Matthews, as debtor in possession, claimed that a pre-petition transfer in the amount of $791,031.61 made on behalf of Matthews to Philips was a preferential transfer and, thus, sought to avoid it. In avoiding the transfer, the bankruptcy court held in relevant part that there was no genuine *376 issue of fact as to Matthews’s claim that it was insolvent at the time of the transfer. We have jurisdiction pursuant to 28 U.S.C. § 158(d), and we affirm. Because the parties are familiar with the factual and procedural history, we do not repeat it here except to the extent necessary for our disposition.
I.
In reviewing the bankruptcy court’s order, “[w]e‘ stand in the same position as did the district court in reviewing the bankruptcy court’s order.” In re Levander, 180 F.3d 1114, 1118 (9th Cir.1999) (internal quotation marks omitted). Thus, as did the district court, “[w]e review [the] bankruptcy court’s decision to grant [Matthews’s] motion for summary judgment de novo.” In re Stanton, 303 F.3d 939, 941 (9th Cir.2002).
II.
A “trustee may avoid any transfer of an interest of the debtor in property” that qualifies as a preferential transfer, which requires in relevant part that the transfer was “made while the debtor was insolvent.” 11 U.S.C. § 547(b)(3). A debtor in possession, such as Matthews, has the same rights to avoid a preferential transfer as does a trustee. See 11 U.S.C. § 1107(a). Subject to certain exceptions, a debtor, such as Matthews, that is neither a partnership nor a municipality is insolvent when “the sum of such entity’s debts is greater than all of such entity’s property, at a fair valuation....” 11 U.S.C. § 101(32)(A). Further, for purposes of determining whether a transfer is preferential and may therefore be avoided, “the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition [for bankruptcy protection].” 11 U.S.C. § 547(f).
A.
Matthews filed its petition for bankruptcy protection under Chapter 11 on April 6, 2000. Accordingly, the 90-day period during which the debtor is presumed to have been insolvent began on January 7, 2000. 11 U.S.C. § 547(f). The transfer at issue here occurred on March 2, 2000, well within this 90-day period.[2]
B.
Philips argues, however, that there is evidence sufficient to create a genuine issue as to Matthews’s insolvency at the time of the transfer and, thus, that the bankruptcy court erred in granting Matthews’s motion for summary judgment. Philips relies on three documents to rebut the presumption of insolvency, each of which we address in turn.
First, Philips relies on the Asset Purchase Agreement dated January 21, 2000, wherein Matthews represented that it “is, and immediately after the Closing will be, Solvent,” defined in relevant part as that “the fair market value of the assets of [Matthews] is greater than the total amount of liabilities (including contingent liabilities) of [Matthews].” Assuming that this representation is admissible and is sufficient to overcome the presumption that Matthews was insolvent on January 21, 2000 (when the Asset Purchase Agreement is dated), it does not likewise overcome the presumption that Matthews was insolvent on March 2, 2000 (the date of the transfer in question). Similarly, assuming *377 that this representation is both admissible and is sufficient to overcome the presumption that Matthews was insolvent “immediately after the Closing,” it again does not overcome the presumption that Matthews was insolvent on March 2, 2000 (the date of the transfer in question) because, as Philips concedes, the closing occurred “sometime” in March 2000 but the exact date is not in evidence. Philips Br. at 7. As the district court correctly held, “[i]n order to overcome the presumption of [in]solvency, Philips must present evidence of solvency on the date of the transfer in question, March 2, 2000.” See also In re World Financial Services Center, Inc., 78 B.R. 289, 241 (B.A.P. 9th Cir.1987) (noting that evidence of solvency at times other than when the transfer at issue was made is insufficient).
Second, Philips relies on a certification executed by Carlos DeMattos (Matthews’s Chief Financial Officer) and dated March 10, 2000, wherein DeMattos certified (1) that Matthews’s representations either made in Waiver and Amendment Agreement No. 6 entered into between Matthews and Chase Manhattan Bank (as agent for a group of banks) and dated “March _ 2000” or otherwise made in writing to Chase Manhattan Bank in connection therewith were true and correct in all material respects and (2) that no event had occurred since the Asset Purchase Agreement’s execution that would have resulted in a “Material Adverse Effect.”
However, Waiver and Amendment Agreement No. 6 was not in evidence before the bankruptcy court; rather, it was submitted after oral argument on and submission of Matthews’s motion for summary judgment as part of Philips’s “ex parte” application to supplement the record, which the bankruptcy court effectively denied.[3] As for the certification as to the nonoccurrence of any “Material Adverse Effect,” the DeMattos certification does not itself define “Material Adverse Effect,” but rather refers to the definition provided in the Amended and Restated Credit Agreement entered into between Matthews and Chase Manhattan Bank and dated April 1, 1998. That too was submitted as part of Philips’ “ex parte” application and similarly was not admitted in evidence. As they were not in evidence below, these documents cannot be considered on appeal. Panaview Door & Window Co. v. Reynolds Metals Co., 255 F.2d 920, 922 (9th Cir.1958); see also Kirshner v. Uniden Corp. of America, 842 F.2d 1074, 1077-78 (9th Cir.1988).[4]
Third, Philips relies on Waiver and Amendment Agreement No. 6 itself, wherein Matthews reaffirmed the representations set forth in the Amended and Restated Credit Agreement. As noted above, however, neither Waiver and Amendment Agreement No. 6 nor the Amended and Restated Credit Agreement were in evidence before the bankruptcy court.
*378 Thus, Philips’s evidence either is not sufficient to rebut the statutory presumption of insolvency or is not properly part of the record on appeal.
C.
Even were we to consider the various representations set forth in the documents not in evidence, they are not sufficient to create a genuine issue as to Matthews’s insolvency. See Thrifty Oil Co. v. Bank of America National Trust and Savings Association, 322 F.3d 1039, 1046 (9th Cir.2003) (“A ‘genuine issue’ of material fact arises if ‘the evidence is such that a reasonable jury could return a verdict for the nonmoving party.’ ”). As noted above, a debtor, such as Matthews, that is neither a partnership nor a municipality is insolvent when “the sum of such entity’s debts is greater than all of such entity’s property, at a fair valuation....” 11 U.S.C. § 101(32)(A). Here, Chase Manhattan Bank (as agent for a group of banks) asserted a deficiency claim in the underlying bankruptcy proceeding in excess of $70 million. Philips disputes neither the “existence” of this claim nor, apparently, that it would have rendered Matthews insolvent at the time of the transfer had Matthews been solely responsible for paying it. Philips Br. at 13.
1.
Instead, Philips argues first that its “claim” (presumably to the preferential transfer) was of a higher priority than was Chase Manhattan Bank’s deficiency claim. However, the relative levels of priority of these claims is relevant not to the issue of insolvency, 11 U.S.C. § 547(b)(3), but rather to a separate requirement for a preferential transfer, namely whether the transfer at issue “enabled [the] creditor to receive more than such creditor would receive if ... such creditor received payment of such debt to the extent provided by the provisions of ... title [11].” 11 U.S.C. § 547(b)(5)(C). Philips did not below contest this latter requirement, and, thus, we decline to consider it. See In re Home America T.V.-Appliance Audio, Inc., 232 F.3d 1046, 1052 (9th Cir.2000) (holding that “absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so”) (internal quotation marks omitted).[5]
2.
Philips also argues that by virtue of the settlement of Chase Manhattan Bank’s deficiency claim, Matthews’s “subrogation and contribution rights” were “forever impacted adversely” and appears to assume that these “subrogation and contribution rights” could have rendered Matthews solvent. Philips Br. at 19; accord id. at 20. But Philips adduces no evidence substantiating the underlying assumption that those entities against whom the “subrogation and contribution rights” could be exercised and perhaps realized upon were themselves solvent or sufficiently so to render Matthews solvent.
AFFIRMED.

 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

. The Chapter 11 bankruptcy proceeding from which the adversary proceeding at issue arose involves twelve debtors: Matthews Studio Equipment Group; Matthews Studio Electronics, Inc.; Hollywood Rental Company, LLC; Duke City Video, Inc.; Duke City Holdings, Inc.; SHOWBIZMART.COM, Inc.; Matthews Studio Group Centers, Inc.; HDI Holdings, Inc.; Four Star Holdings, Inc.; Matthews Acceptance Corp.; Four Star Lighting, Inc.; and Matthews Studio Sales, Inc. The bankruptcy court administratively consolidated the individual bankruptcy cases and estates, and, for the sake of simplicity, we do not distinguish among them in this memorandum disposition.

. Although the check making the transfer is dated February 29, 2000, it appears to have been stamped as having been processed by the bank on March 2, 2000, and it is the latter date that is relevant. Barnhill v. Johnson, 503 U.S. 393, 400, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992).

. Philips concedes that the bankruptcy court "refused to consider and admit th[is] evidence.” See Philips Reply Br. at 4 (referring to a portion of the “ex parte” application). Indeed, although the bankruptcy court "read the ex parte application and assessed its merits,” it did so only "to determine whether, in the interests of justice, this matter should be reopened for argument,” and the bankruptcy court ultimately "concluded that it should not be reopened.” Thus, the district court neither considered the documents in the "ex parte” application in the portion of its memorandum decision pertaining specifically to Matthews's solvency, nor did the district court give Matthews an opportunity to respond to the "ex parte” application. Likewise, in reviewing the bankruptcy court’s decision, the district court did not consider these documents.

. Philips neither argues that the bankruptcy court abused its discretion in denying its "ex parte” application nor has it made a motion to supplement the record on appeal.

. Philips’s related arguments attempting to show (1) that its claim is superior to that of Chase Manhattan Bank, (2) that the bankruptcy court’s order approving a settlement reached between Matthews and Chase Manhattan Bank did not subordinate Philips's claim to that of Chase Manhattan Bank, and (3) that Philips's claim could not have been subordinated by virtue of this settlement because Philips was not given notice of the settlement all fail for the same reason.