**In re GRUPPO ANTICO, INC.,
f/k/a Trend Holdings, Inc.,
et al., Debtors.**

**Broadway Advisors, LLC, in its Representative capacity as the liquidating trustee of the Gruppo Antico Liquidating Trust, Plaintiff,**

v.

**Hipro Electronics, Inc. and Hipro Electronics, Ltd., Defendants.**

**Bankruptcy No. 02–1328 (PJW).
Adversary No. 03–58480 (KJC).**

United States Bankruptcy Court,
D. Delaware.

Feb. 7, 2007.

---

Jeffrey Philip Wasserman, LLC, Wilmington, DE, for Defendant Kazi Food Inc.

Laura Davis Jones, Pachulski, Stang, Ziehl Young, Jones & W, Michael Seidl, Pachulski, Stang, Ziehl, Young & Jones, Wilmington, DE, for Plaintiff AFD Fund.

## MEMORANDUM [1]

KEVIN J. CAREY, Bankruptcy Judge.

On November 7, 2002 (the "Petition Date"), Gruppo Antico, Inc., f/k/a Trend Holdings, Inc., et. al. (the "Debtor") filed a voluntary chapter 11 bankruptcy petition. On November 11, 2003, the Debtor commenced this adversary proceeding by filing a Complaint (the "Original Complaint") (docket no. 1) against Hipro Electronics, Inc. ("Hipro–USA"), alleging that transfers made by the Debtor to Hipro–USA within ninety days prior to the bankruptcy petition date (the "Preference Period") should be avoided as preferences pursuant to 11 U.S.C. § 547(b) and § 550.

Before the Court is Hipro–USA's Motion for Judgment on the Pleadings (docket no. 95) (the "Motion") seeking relief pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, made applicable hereto by Rule 7012 of the Federal Rules of Bankruptcy Procedure. The Motion is opposed by the plaintiff, Broadway Advisors, LLC in its representative capacity as the Liquidating Trustee of the Gruppo Antico Liquidating Trust (the "Plaintiff"). By agreement of the parties, Hipro–USA's Motion will be treated as a motion for summary judgment pursuant to Rules 12(c) and 56 of the Federal Rules of Civil Procedure, made applicable, respectively, by Rules 7012(c) and 7056 of the Federal Rules of Bankruptcy Procedure, and, for the reasons set forth below, it will be granted.

## I. FACTS

The following facts are largely undisputed. Prior to the Petition Date, the Debtor was a global supplier of integrated enclo-

---

1. This Memorandum constitutes the findings of fact and conclusions of law, as required by Fed.R.Bankr.P. 7052. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). The parties agreed that venue is proper pursuant to 28 U.S.C. § 1409, and that this adversary proceeding involves a core matter pursuant to 28 U.S.C. § 157(b)(2)(F). See Joint Pretrial Memorandum, December 15, 2006, at 2 (hereinafter, JPM at __.).

sures for the computer, networking, and communications industries. (JPM at 3). Co-defendant Hipro Electronics, Ltd. ("Hipro–Taiwan") was an electronics component manufacturer which sold power sources to the Debtor, with its principal place of business in Taiwan. (JPM at 4). Hipro–USA provided sales support, technical support and acted as a service arm to Hipro–Taiwan to support sales of Hipro–Taiwan's products being incorporated into Dell computer products, including Hipro–Taiwan's sales to the Debtor for integration into Dell computer products. (JPM at 5). Hipro–USA was located in Austin, Texas, and Hipro–Taiwan, while located in Taiwan, had a business office and bank account in California.

During the Preference Period, the Debtor paid twenty-seven (27) invoices issued by Hipro–Taiwan totaling $3,595,652.44 (the "Transfers"), either by wire transfer or check. (JPM at 8). The wire transfers from the Debtor during the Preference Period were made to Hipro–Taiwan's California bank account. (JPM at 10). Shortly before the Petition Date, the Debtor began forwarding payment in the form of checks to Hipro–USA in Austin, Texas. The checks were made payable to "Hipro Electronics, Inc." Hipro–USA requested that the Debtor stop sending the checks to Hipro–USA, and, instead, to recommence sending the payments via wire transfer directly to Hipro–Taiwan's bank account in California. The Debtor did not respond to this request, and continued to mail the checks to Hipro–USA's office in Austin, Texas, prior to and during the Preference Period. Each time Hipro–USA received a check on account of Hipro–Taiwan's invoices, it would forward the check to Hipro–Taiwan's California office, and then Hipro–Taiwan would deposit the check into its bank account. (JPM at 11).

The parties stipulated that during the Preference Period, Hipro–Taiwan provided new value to the Debtor totaling $1,430,100.00 for which Hipro–Taiwan was not paid. After application of new value to the amount of the Transfers made by the Debtor during the Preference Period, the Plaintiff seeks a net recovery of $2,165,552.44. (JPM at 13).

### Hipro–USA's Answers to the Original Complaint.

The Original Complaint was served upon Brett Brewer, former President and registered agent of Hipro–USA. Hipro–USA filed and served its Answer to the Complaint on December 11, 2003 (docket no. 3), in which it admitted receiving the Transfers in question, and admitted being a vendor to the Debtor, but denied that the Transfers received were avoidable "transfers" within the meaning of 11 U.S.C. § 547(b). Hipro–USA also denied that each of the Transfers were on account of an antecedent debt owed by the Debtor to Hipro–USA, and further denied that the Transfers enabled it to receive more than it would have received if the Debtor's case were a case under Chapter 7, if the Transfers had not been made, and if Hipro–USA received payment on the debt to the extent provided by Title 11 of the United States Code.

### Hipro–USA's First Amended Answer and Answers to Interrogatories.

On October 27, 2004, the Plaintiff and Hipro–USA entered into a stipulation permitting the Plaintiff to file a First Amended Complaint (docket no. 18), which the Plaintiff filed and served the same day (docket no. 19). In response, on November 8, 2004, Hipro–USA filed its First Amended Answer (docket no. 24), in which it denied being a vendor to the Debtors, and additionally claimed that it was not a transferee of the challenged Transfers. That same day, the Plaintiff received Hi-

pro–USA's Responses to its Discovery Requests. In the Answers to Interrogatories, Hipro–USA asserted that "it was not a vendor of the Debtor, rather Defendant assisted in servicing the Plaintiff's account with Hipro Electronics Co. Ltd. A Taiwancs [sic] corporation...[and that] Defendant was a mere conduit for payments between Plaintiff and its vendor...." (Answers to Interrogatories, No. 1).

### The Deposition of Brett Brewer.

On November 19, 2004, the Plaintiff took the deposition of Brett Brewer (the "Brewer Deposition"), during which he was examined, in part, about the factual basis for Hipro–USA's Answer to the First Amended Complaint. The deposition transcript reflects, *inter alia,* Mr. Brewer's testimony that: (i) Hipro–USA received the checks for the Transfers in question; (ii) Hipro–USA requested that the Debtor direct payment to Hipro–Taiwan directly; and (iii) either Mr. Brewer and/or his employees at the time forwarded such checks to Hipro–Taiwan's office in California. (*See* Brewer Deposition, pp. 153–156).

### The Second Amended Complaint.

On January 6, 2005, the Plaintiff filed its Motion for Leave to File a Second Amended Complaint (docket no. 25), proposing to add Hipro–Taiwan as a co-defendant. On January 21, 2005 Hipro–USA filed its Objection to that Motion (docket no. 26), and on January 27, 2005, the Plaintiff filed its Reply to Hipro–USA's Objection (docket no. 27). On February 16, 2005, the Court entered its Order Granting the Plaintiff's Motion for Leave to File a Second Amended Complaint (docket no. 33).

### The Letters Rogatory.

On March 8, 2005, the Plaintiff attempted to serve its Second Amended Complaint for Avoidance and Recovery of Preferential Transfers (docket no. 37) upon Hipro–Taiwan, but was unsuccessful. Subsequently, the Plaintiff requested (docket no. 42) and the Court issued (docket no. 49) its Order Granting Plaintiff's Motion for Issuance of Letter of Request for International Judicial Assistance for Service of Summons in a Foreign Country to perfect service upon Hipro–Taiwan.[2] On July 7, 2005, service was ultimately perfected upon Hipro–Taiwan. (JPM at 36).

### Hipro–USA's Motion for Judgment on the Pleadings.

Trial is set to take place on February 8, 2007, and on December 15, 2006 the parties filed a Joint Pretrial Memorandum (docket no. 93). Hipro–USA now moves for judgment on the pleadings because, although Hipro–USA received the Transfers in question from the Debtor, Hipro–USA immediately forwarded the checks to Hipro–Taiwan's office in California. Thus, Hipro–USA argues that the Transfers cannot be avoided pursuant to § 547(b) and § 550(a)(1), because it did not receive a "transfer of an interest of the debtor in property," and that it was a "mere conduit" rather than an "initial transferee." On January 7, 2007, the Plaintiff filed its Response to Hipro–USA's Motion (docket no. 96), arguing, first, that Hipro–USA's actions and representations estop it from denying liability; and second, that such bad-faith acts bar Hipro–USA from asserting the "mere conduit" defense. On January 12, 2007 Hipro–USA filed a Reply Brief in Support of its Motion for Judg-

---

**2.** Pursuant to Rule 4(f) of the Federal Rules of Civil Procedure, made applicable by Rule 7004 of the Federal Rules of Bankruptcy Procedure, the Letters Rogatory requested that the appropriate court in Taiwan cause an alias Summons on the Second Amended Complaint and the Second Amended Complaint to be served upon Hipro–Taiwan in Taipei Hsein, Taiwan, R.O.C.

ment on the Pleadings (docket no. 106). Oral argument on Hipro–USA's Motion was held on January 17, 2007.

## I. STANDARD—SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party has made a proper motion for summary judgment, the burden shifts to the non-moving party, pursuant to Rule 56(e), which states, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropri-

ate, shall be entered against the adverse party." Fed.R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

Before a court will find that a dispute about a material fact is genuine, there must be sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the facts and draw inferences in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. "[W]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co.*, 24 F.3d 508, 512 (3d Cir.1994). It is not the role of the judge to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## II. DISCUSSION

### A. Did Hipro–USA Receive a "Transfer of an Interest of the Debtor in Property?"

Hipro–USA argues that it did not receive a "transfer of an interest of the debtor in property" under § 547(b)[3] when

---

3. The version of § 547(b) applicable to this dispute provides:

**11 USC 547. Preferences**
(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
 (1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
 (A) on or within 90 days before the date of the filing of the petition; or

it received checks from the Debtor made payable to Hipro–USA. Hipro–USA maintains that it forwarded the checks to Hipro–Taiwan in California, and Hipro–Taiwan deposited those checks into its bank account, thus the "Transfer" under the meaning of § 547(b) did not occur until "after Hipro–USA forwarded the checks to the creditor for whom they were intended—Hipro–Taiwan—and after Hipro–Taiwan deposited the checks in its own account, when the Debtor's bank honored them." In support of this argument, Hipro–USA cites to the United States Supreme Court's determination in *Barnhill v. Johnson,* 503 U.S. 393, 400, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), in which the Court found "for the purposes of payment by ordinary check ... a 'transfer' as defined by § 101(54) occurs on the date of the honor, and not before." *Id. See also HLI Creditor Trust, Int'l. v. Hyundai Motor Co., (In re Hayes Lemmerz Int'l, Inc.),* 329 B.R. 136, 141 (Bankr.D.Del.2005); *Waslow v. The Interpublic Group, (In re M Group, Inc.),* 308 B.R. 697, 700 (Bankr.D.Del. 2004).

The checks at issue were deposited, not by Hipro–USA, but by Hipro–Taiwan, which deposited them in its bank account. Under *Barnhill,* the transfers occurred for § 547(b) purposes on the dates Hipro–Taiwan's bank honored the checks. Thus, Hipro–USA did not receive a "transfer of an interest of the debtor in property" under § 547(b) when the Debtor mailed the checks to, or when they were received by, Hipro–USA.

## B. Is Hipro–USA an Initial Transferee Under § 550(a)?

■ Hipro–USA next raises a defense under section 550(a),[4] and argues that it was not an initial transferee under the statute, but that it was instead a "mere conduit for payments from the Debtor to Hipro–Taiwan." The Plaintiff, however, argues that the mere conduit defense is unavailable because Hipro–USA's actions and representations, both pre-petition and in this litigation, amount to bad faith. The Plaintiff argues that the defense is one wholly rooted in equity and requires a showing of good faith on behalf of the party asserting the defense. In a recent decision, Chief Judge Walrath examined the mere conduit defense in detail:

> While the language of section 550(a) does not appear to present an exception to recovery of a preference under section 547, courts have held that it does

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

**4.** 11 USC § 550. Liability of transferee of avoided transfer
(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or medlate transferee of such initial transferee.
(b) The trustee may not recover under section (a)(2) of this section from—
(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
(2) any immediate or mediate good faith transferee of such transferee....

provide a defense to a preference action for parties who act as a mere conduit in receiving a transfer solely for another and not for their own benefit, *See, e.g., Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1196–1202 (10th Cir.2002) (holding that escrow agent which could not disburse funds without express directions was mere conduit for escrow funds); *Christy v. Alexander & Alexander of New York Inc. (In re Finley, et al.)*, 130 F.3d 52, 57 (2d Cir.1997) (concluding that insurance broker which received premiums and remitted them to insurance company was mere conduit); *Lowry v. Sec. Pac. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.)*, 892 F.2d 26, 28 (4th Cir.1989) (holding that creditors' committee which received funds from debtor and distributed them to creditors was mere conduit); *Official Comm. of Unsecured Creditors v. Guardian Ins. 401 (In re Parcel Consultants, Inc.)*, 287 B.R. 41, 46 (Bankr. D.N.J.2002) (finding insurance company which administered 401k plan for debtor was mere conduit for plan funds).

The rationale for finding that a mere conduit is not an initial transferee liable for a preference was articulated by the Second Circuit as follows: "The statutory structure confirms that the term 'initial transferee' references something more particular than the initial recipient.... Every Court of Appeals to consider this issue has squarely rejected a test that equates mere receipt with liability, declining to find 'mere conduits' to be initial transferees." *Finley*, 130 F.3d at 57.

The Seventh Circuit has articulated the test adopted by most courts to determine whether a party is a mere conduit or a transferee liable for the preference: "We think the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes. When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir.1988). Thus, the use of this defense requires that the defendant establish that it lacked dominion and control over the transfer because the payment simply passed through its hands and it had no power to redirect the funds to its own use. *See, e.g., Finley*, 130 F.3d at 57–58; *Bonded Financial*, 838 F.2d at 893. To have dominion and control means to be capable of using the funds for "whatever purpose he or she wishes, be it to invest in lottery tickets or uranium stocks." *Richardson v. I.R.S. (In re Anton Noll, Inc.)*, 277 B.R. 875, 879 (1st Cir. BAP 2002).

*Argus Management Group v. GAB Robins, Inc., and GAB Robins North America, (In re CVEO Corp.)*, 327 B.R. 210, 215 (Bankr.D.Del.2005).

Hipro–USA asserts that a transferee under § 550 is one who has dominion over the money or other asset, that is, the right to put the money to one's own purposes. *See, e.g. Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir.1988) (finding that a bank, which received a check from the debtor payable to the bank's order, which was instructed to deposit check into depositor's account, was not an initial transferee for purposes of section 550(a)). Hipro–USA further argues it was not owed the money, was not entitled to the money, and had no right to do anything with the money other than forward it to Hipro–Taiwan, its rightful owner.

The Plaintiff disagrees. In its Answer to the Original Complaint, Hipro–USA ad-

mitted being a vendor to the Debtors, and admitted that the Debtors transferred $2,542,148.44 to Hipro–USA within the Preference Period, but denied that the Transfers were subject to avoidance and recovery by the Plaintiff. According to the Debtor's financial records, all Transfers by check were made payable to Hipro–USA and delivered to that entity. The Plaintiff maintains that the Debtor was instructed to make wire Transfers payable to "Our corporate offices in Taiwan" or to "Our account in Taiwan." The instructions referred to "Hipro Electronics" generically, and were not followed by an "Inc." or "Ltd." The Plaintiff points out that the Debtor's schedules also solely listed Hipro Electronics, Inc. at Hipro–USA's address as a general unsecured creditor.

Hipro–USA counters that, as stipulated to in the Joint Pretrial Memorandum, at all times the invoices for the products received by the Debtor were in Hipro–Taiwan's name only and the Debtor was instructed to wire payments directly to Hipro–Taiwan's accounts. When the Debtor began sending checks to Hipro–USA in Austin, Texas, Hipro–USA instructed the Debtor to recommence sending payments to Hipro–Taiwan, which the Debtor did not do. Hipro–USA maintains that it "never endorsed or deposited the checks simply because the funds did not belong to it." Hipro–USA further argues that it admitted receiving the Transfers in question because it did, in fact, receive the checks, but denied being a transferee for purposes of §§ 547 and 550 in its Original Answer because it forwarded those checks to Hipro–Taiwan.

The Plaintiff also argues that Hipro–USA should be denied any right to invoke the mere conduit defense because it intentionally misled the plaintiff, in pleading and into discovery, during which Hipro–USA "repeatedly requested continuances of the deposition [of Hipro–USA] from the original July 15, 2004 date to September 8, 2004, to October 18, 2004, and finally to November 19, 2004, on which date the deposition was taken." On November 8, 2004, Hipro–USA filed its First Amended Answer in response to the Plaintiff's Amended Complaint, in which it denied that it was a vendor to the Debtors, and claimed that it was not a transferee of the Transfers challenged as avoidable and recoverable. That same day, the Plaintiff received Hipro–USA's responses to its Discovery Requests, and in the Interrogatory Answers, for the first time, Hipro–USA asserted that "it was not a vendor of the Debtor, rather Defendant assisted in servicing the Plaintiff's account with Hipro Electronics Co. Ltd. A Taiwanes [sic] corporation ... [and that] Defendant was a mere conduit for payments between Plaintiff and its vendor ...." (Answers to Interrogatories, No. 1).

The Plaintiff details in its Reply Brief what it considers the most troublesome aspects of this chronology:

26. Based on defendant Hipro–USA's admissions in its Original Answer to the Original Complaint and on the subsequent repeated delays in responding to Plaintiff's timely served discovery requests and repeated continuances of the deposition such that the discovery responses were received on the date of the expiration of the two year statute and the deposition was not taken until after its expiration, only then disclosing the new facts, said Hipro–USA misled the Plaintiff, which prevented Hipro–Taiwan from being named as a defendant when Plaintiff had the opportunity to do so prior to the expiration of the two year statute.

27. Also through the late served discovery, Plaintiff learned that all pur-

chase orders for product were sent to Hipro–USA for handling and that Hipro–USA prepared all invoices for ordered product in the name of Hipro–Taiwan, which invoices did not contain any "pay to" instructions.

28. Based on this newly ascertained information, on January 6, 2005, Plaintiff filed its Motion for Leave to File a Second Amended Complaint and for Order to Modify the Scheduling Order [D.I. 25] seeking to name Hipro–Taiwan as an additional defendant pursuant to FRCP Rule 15 which permits "relation back" under the terms of that rule. In the Motion, Plaintiff submitted substantial and uncontradicted evidence that Hipro–Taiwan had direct notice of the contents of the Original Complaint within only a few weeks of its service on Hipro–USA and had to know that it should have been a proper defendant in the action.

29. Hipro–USA filed an objection to that motion [D.I. 26] asserting, in part, and for the first time, that it did not delay in responding to Plaintiff's discovery, but rather that it had not received it in the first place because same was purportedly served to the incorrect suite number in Hipro–USA's counsel's building. Plaintiff refuted these new assertions in its reply brief [D.I. 27] noting that (1) the discovery requests were not returned as undeliverable, (2) the suite number utilized was actually occupied by Defendant's counsel, and that (3) Defendant's counsel utilized the very same suite number in his signature block to Defendant's initial disclosures.

30. On February 26, 2005 the Court granted Plaintiff's Motion for leave to File A Second Amended Complaint [D.I. 34, amended at D.I. 48].

31. Hipro–Taiwan was ultimately served and appeared in this litigation. However, and as reflected in the Joint Pretrial Memorandum, Hipro–Taiwan seeks a determination that the statute of limitations had run against it because the Second Amended Complaint did not "relate back" to the filing of the initial or First Amended Complaint.[5]

32. In the event that the Court determines that the allegations against Hipro–Taiwan should not relate back, and Hipro–USA is successful in the present motion, Hipro–USA's patently inequitable conduct will deprive Plaintiff of a source of recovery for distribution to general unsecured creditors. Such gamesmanship should not be so rewarded and the estate's creditors should not be so prejudiced. . . .

 The Plaintiff's arguments fail for two reasons. First:

Generally, factual assertions admitted by a party in an answer or response are considered judicial admissions which are conclusively binding upon the party who made them. *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir.1983). Once a pleading is superceded [*sic*] by an amended answer or response, however, the admissions in the superceded [*sic*] pleading, as a general rule, lose their binding force. *Id.* at 1396, n. 5. A party may introduce superceded [*sic*] admissions into evidence to be considered as adverse evidentiary admissions by the fact-finder. *Id.* at 1396; *See also Borel v. United States Casualty Co.*, 233 F.2d 385, 387–88 (5th Cir.1956).

*In re C.F. Foods, L.P.*, 265 B.R. 71, 87 (Bankr.E.D.Pa.2001). Therefore, any admissions made by pleadings which were superseded by subsequent pleadings lost any conclusive binding effect they may

---

**5.** This issue is scheduled to be determined immediately prior to commencement of trial.

have had. Further, even if introduced at trial, nothing in this record provides sufficient evidence upon which could be based a reasonable fact finding that the statements at issue in the superseded pleadings are admissions of liability.

■■■ Second, equitable estoppel focuses on the relationship between parties to prior litigation. *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d. Cir.1988), citing *Scarano v. Central Railroad Co.,* 203 F.2d 510 (3d Cir.1953); *USLIFE Corp. v. U.S. Life Insurance Co.,* 560 F.Supp. 1302 (N.D.Tex.1983). The United States Court of Appeals for the Third Circuit has explained the elements of equitable estoppel as follows:

> While a hallmark of the doctrine [of estoppel] is its flexible application, certain principles are tolerably clear: If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act .... the first person is not entitled.... (b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before the discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired. *Restatement (Second) of Torts* § 894(1) (1979). Thus the party claiming the estoppel must have relied on its adversary's conduct in "such manner as to change his position for the

worse," and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading. *Heckler [v. Community Health Services of Crawford County, Inc.],* 467 U.S. [51] at 59, 104 S.Ct. [2218] at 2223[, 81 L.Ed.2d 42 (1984)].

The burden of proof is on the party claiming estoppel. *See Lyng v. Payne,* 476 U.S. 926, 106 S.Ct. 2333, 2340, 90 L.Ed.2d 921, 932 (1986) (a party cannot prevail on an estoppel claim without at least demonstrating the traditional elements of estoppel); *see also Heckler,* 467 U.S. at 61, 104 S.Ct. at 2224. Therefore, to succeed on a traditional estoppel defense the litigant must prove (1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment.

*U.S. v. Asmar,* 827 F.2d 907, 912 (3d Cir. 1987).

■■■ After review of the record before me, I conclude that there is nothing in the pre-litigation conduct of Hipro–USA which warrants application of the equitable estoppel doctrine. Other alleged bad faith conduct complained of occurred *after* commencement of litigation.[6] Even if, in theory, the type of conduct complained of here (whenever occurring) could serve as a bar to the invocation of the mere conduit defense, the record before me does not support application of any estoppel doctrine or

---

**6.** In contrast to the doctrine of equitable estoppel, the doctrine of judicial estoppel, not asserted by the Plaintiff, applies " 'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.' " *Zedner v. U.S.,* —— U.S. ——, 126 S.Ct. 1976, 1987,

164 L.Ed.2d 749 (2006), citing *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). Judicial estoppel " 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' " *Id.,* citing *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); *See also New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

 

reflect conduct that rises to the level of bad faith.

An appropriate Order follows.